[No. 50279-0. En Banc. January 10, 1985.]

MICHELLE M. GLASGOW, ET AL, *Respondents*, v.
GEORGIA–PACIFIC CORPORATION, ET AL,
*Appellants.*

*Lane, Powell, Moss & Miller* and *Eugene R. Nielson,* for appellants.

*Manza, Moceri, Gustafson & Messina, P.S.,* by *John S. Glassman* and *Michael S. Manza,* for respondents.

ANDERSEN, J.—

FACTS OF CASE

This case of first impression in this state involves sexual harassment at the workplace.

Two female employees brought suit against their employer, Georgia–Pacific Corporation, alleging sex discrimination in violation of RCW 49.60 and the tort of outrage. The complaint of a third female employee was severed from this suit and continued until a later date. Following a trial to the court, extensive findings of fact were entered. The findings are unchallenged on appeal; therefore, we consider them as verities for purposes of the appeal.

Some factual details, as found by the trial court in this case, must be recounted in order to delineate the egregious pattern of conduct the two female workers were subjected to on the job.

From October 1979 until January 1982, David Long, a male co–worker, on several occasions "would place his hands on [one of the plaintiff's] hips and rub his crotch across her back side as he was passing". One night at work this co–worker "approached her, staring at her breasts. He then placed his hand on her right breast without any welcome or invitation". He "molested" this plaintiff another time "by approaching her from behind and grabbing her buttocks with his hands".

As early as November 1979 the plant manager knew this male employee was "using abusive language around female employees" and had "touched or fondled" this plaintiff and

another female employee "in an unwanted sexual way". No corrective or disciplinary action was taken. Complaints of the co-worker's "other intimidating behavior" toward this plaintiff were lodged again in mid–1981, this time to a plant superintendent who acknowledged that other female employees, including the other plaintiff in this action, were also having problems with this male co-worker. Shortly thereafter, this plaintiff began to hear threats and complaints concerning her job performance purportedly coming from the plant manager.

The other plaintiff had been working for the employer for only a month when the same male co-worker began to press himself against her in the same manner as he passed by her. A complaint was lodged with the plant superintendent. The male co-worker would also stare at her "in a sexually intimidating way, follow her about the plant, in such a way that it intimidated her, [and] interfered with her work performance". She tried to avoid him and informed the plant manager "who did nothing". She and yet another female employee confronted the plant manager about this "continued sexual harassment".

The male co-worker was finally transferred to another shift, but his course of intimidation continued. In addition, other employees, including a supervisor, acted "in an intimidating fashion" toward this plaintiff because of her complaints.

Not until February 1982 was the male co-worker given a 3–day suspension "based on his prior acts of sexual harassment".

One of the plaintiffs suffered "severe emotional anguish and distress demonstrated by physical symptoms" of various kinds. She resigned in December 1981 after working less than 9 months. The other plaintiff was "emotionally and psychologically injured" and likewise demonstrated physical manifestations of "severe emotional distress". She resigned in October 1982.

The trial court found that as a result of the foregoing acts and inactions, along with other similar ones, a hostile

and intimidating work environment was created and it was this which proximately caused severe emotional distress to the plaintiffs. The trial court also found that these facts constituted the tort of outrage but that they did not permit a finding that either of the plaintiffs were constructively discharged from their jobs. Judgment for damages was entered for the employees against the employer in the aggregate sum of $46,875 plus costs and attorneys' fees in the amount of $17,275.

The employer appeals and the plaintiff–employees cross–appeal. One principal issue is presented.

ISSUE

Did the trial court err in concluding that the employer was liable for sexual discrimination in violation of RCW 49.60?

DECISION

CONCLUSION. The plaintiff–employees established that they were subjected to uninvited sexual harassment by a co–worker with the actual knowledge of two supervisory personnel who undertook no reasonably prompt and adequate remedial measures to alleviate the resulting hostile and intimidating work environment in which the employees found themselves. The recovery of damages by the plaintiff–employees for the mental and emotional suffering they sustained was an appropriate remedy for such unlawful sexual discrimination.

In the interest of readability, the citations in this opinion have been placed in the margin wherever feasible.

The Legislature has declared practices of discrimination because of sex to be matters of state concern. RCW 49.60-.010. In furtherance of this concern, a state statute provides that "[i]t is an unfair practice for any employer . . . [t]o discriminate against any person in compensation or in other terms or conditions of employment because of such person's . . . sex", RCW 49.60.180(3), and another requires that such provision "be construed liberally for the accomplishment of the purposes thereof," RCW 49.60.020. Yet another

statute provides that persons injured by such violations shall have a civil action to recover actual damages, costs and attorneys' fees. RCW 49.60.030(2).

██ In the case before us, the allegations of the plaintiff–employees were to the effect that certain acts and conduct of other employees of the employer constituted sexual harassment; that this harassment, which was known to exist by various of the employer's supervisory personnel, created a hostile and intimidating work environment thereby depriving them of the opportunity to work free of sexual discrimination; and that this discrimination caused them severe physical, mental and emotional distress. Thus the plaintiffs' claim essentially is that their employer implicitly, but effectively, made their endurance of sexual intimidation a term or condition of their employment.

These allegations are actionable under this state's Law Against Discrimination, RCW 49.60. Sexual harassment as a working condition unfairly handicaps an employee against whom it is directed in his or her work performance and as such is a barrier to sexual equality in the workplace. In assessing the viability of a sexual harassment claim under federal law, one court posited this rhetorical question: "How then can sexual harassment, which injects the most demeaning sexual stereotypes into the general work environment and which always represents an intentional assault on an individual's innermost privacy, not be illegal?"[1]

Under the facts as found by the trial court, this is not a quid pro quo sexual harassment case, that is, it is not a situation where an employer requires sexual consideration from an employee as a quid pro quo for job benefits. It is, rather, a case wherein the employee seeks to hold the employer responsible for a hostile work environment created by a supervisor or co–worker's sexual harassment of the employee. As the Supreme Court of Minnesota held in construing an anti–sex discrimination statute similar to ours:

---

[1]*Bundy v. Jackson,* 641 F.2d 934, 945 (D.C. Cir. 1981).

In our view, the Act does not impose a duty on the employer to maintain a pristine working environment. Rather, it imposes a duty on the employer to take prompt and appropriate action when it knows or should know of co–employees' conduct in the workplace amounting to sexual harassment.

*Continental Can Co. v. State,* 297 N.W.2d 241, 249 (Minn. 1980).

To establish a work environment sexual harassment case, the better reasoned rule is that an employee must prove the existence of the following elements.[2]

1. The harassment was unwelcome. In order to constitute harassment, the complained of conduct must be unwelcome in the sense that the plaintiff–employee did not solicit or incite it, and in the further sense that the employee regarded the conduct as undesirable or offensive.

2. The harassment was because of sex. The question to be answered here is: would the employee have been singled out and caused to suffer the harassment if the employee had been of a different sex? This statutory criterion requires that the gender of the plaintiff–employee be the motivating factor for the unlawful discrimination.

3. The harassment affected the terms or conditions of employment. Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law. The harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. Whether the harassment at the workplace is sufficiently severe and persistent to seriously affect the emotional or psychological well being of an employee is a question to be determined with regard to

---

[2]Interpretations of Title VII, § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1982) are not binding on this court, but are instructive and lend support to our decision herein. *See Davis v. Department of Labor & Indus.,* 94 Wn.2d 119, 615 P.2d 1279 (1980). *See generally Barrett v. Omaha Nat'l Bank,* 726 F.2d 424 (8th Cir. 1984); *Katz v. Dole,* 709 F.2d 251 (4th Cir. 1983); *Henson v. Dundee,* 682 F.2d 897 (11th Cir. 1982); *Bundy v. Jackson,* 641 F.2d 934 (D.C. Cir. 1981).

the totality of the circumstances.

4. The harassment is imputed to the employer. Where an owner, manager, partner or corporate officer personally participates in the harassment, this element is met by such proof. To hold an employer responsible for the discriminatory work environment created by a plaintiff's supervisor(s) or co–worker(s), the employee must show that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action. This may be shown by proving (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the workplace as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment.

As to element 4, the trial court found:

> In the case at bar, [the employer] knew or should have known that [the male co–worker's] unwelcome sexual advances and other verbal or physical conduct of his [sic] sexual nature were unreasonably interfering with [the plaintiffs'] work performance and/or created an intimidating, hostile or offensive working environment. Further, no reasonable immediate or appropriate corrective action was taken to remedy the situation.

Finding of fact 54. This finding is amply supported by the record; it is also unchallenged on appeal. The plaintiffs have proved the requisite elements necessary to establish their claim of sexual discrimination. Accordingly, the plaintiffs were entitled to recover damages for physical, emotional and mental suffering as they did.[3]

This case comes before us after the harm has been done to the employees and a money judgment entered against the employer. Nonetheless, we view the essential purpose of

---

[3]RCW 49.60.030(2); *Human Rights Comm'n v. Cheney Sch. Dist. 30*, 97 Wn.2d 118, 124, 641 P.2d 163 (1982); *Ellingson v. Spokane Mortgage Co.*, 19 Wn. App. 48, 57–58, 573 P.2d 389 (1978).

the cause of action, which we herein recognize, to be *preventive* in nature.[4] As the fourth element of the cause of action makes clear, an employer may ordinarily avoid liability by taking prompt and adequate corrective action when it learns that an employee is being sexually harassed.

Having decided the liability issue on the basis stated, it is unnecessary to deal with the alternative basis of recovery stated by the trial court, namely that the tort of outrage was committed, other than to point out that even in the presence of reprehensible behavior the strict limiting parameters of that tort remain.[5]

■ Contrary to plaintiff–employees' claim on cross appeal, we agree with the trial court that existence of unlawful discrimination alone is insufficient to support a finding of constructive discharge from employment.[6] Moreover, the evidence in this case was not sufficient to convince the trial court, as the trier of fact, that either of the employees' resignations constituted a constructive discharge such as to justify additional damages on account thereof. On the record before us we cannot conclude this was error.

Since the plaintiff–employees were awarded their costs and reasonable attorneys' fees at trial in accordance with the antidiscrimination statute, RCW 49.60.030(2), and since they did not seek other relief afforded by the Consumer Protection Act, RCW 19.86, we do not reach the employees' further claim that the trial court erred in concluding that there was no violation of the Consumer Protection Act.

Plaintiffs did not comply with RAP 18.1; therefore, they are not entitled to attorneys' fees on appeal.

---

[4] *See Bundy,* 641 F.2d at 947.

[5] *See Contreras v. Crown Zellerbach Corp.,* 88 Wn.2d 735, 565 P.2d 1173 (1977).

[6] *See generally Henson,* 682 F.2d at 907–08; *Nolan v. Cleland,* 686 F.2d 806, 812–13 (9th Cir. 1982). *See also Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir. 1981).

Affirmed.

WILLIAMS, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.