957 P.2d 767 (1998)
90 Wash.App. 468
Pauline HERRIED, Appellant,
v.
PIERCE COUNTY PUBLIC TRANSPORTATION BENEFIT AUTHORITY CORPORATION, a/k/a Pierce Transit, and Ed Washington, Respondents.
No. 20843-1-II.
Court of Appeals of Washington, Division 2.
February 27, 1998.
Publication Ordered March 27, 1998.
*768 Erik Jon Bjornson, Law Offices of Stan Kanarowski, Tacoma, for Appellant.
Bruce L. Schroeder and Rodney B. Younker, Summit Law Group Pllc, Seattle, for Respondents.

PUBLISHED OPINION
ARMSTRONG, Judge.
Pauline Herried, a training instructor with Pierce Transit, sued her employer, alleging that she was sexually harassed by a fellow employee. She also alleged that Pierce Transit was liable for negligently supervising the fellow employee. The trial court granted summary judgment for the employer, ruling that Herried failed to show that she was harassed because of her sex; the court also ruled that Herried's negligent supervision claim was barred by the Industrial Insurance Act. We affirm.

FACTS
Herried and Ed Washington, both employees of Pierce Transit, started working together as instructors in March 1989. In August 1989, Herried and a fellow instructor, Sharon Olsen, complained to their supervisor that Washington was shirking work, and that Washington was defensive when asked to help with office work. Herried made no complaints that Washington was sexually harassing her.
Pierce Transit hired a consultant, Ken Schultz, to resolve the department's personality conflicts. After Schultz met with the instructors individually and as a group, the department, according to Herried, "quieted down a little bit."
In late 1990, conflicts began again. Herried complained to her new manager, Steve Nunan, that she felt Washington was sexually harassing her. Nunan interviewed the *769 entire current staff and a former instructor. Nunan met individually with department members and discussed problems in the performance of each. Nunan explained that Washington's rude and unprofessional acts did not constitute sexual harassment. Nunan also discussed with Herried complaints that had been made about her own unprofessional behavior. Finally, Nunan listed "expectations" for the entire department, including a demand that all unprofessional behaviors cease.
Pierce Transit also brought in another consultant, Pablo Stanfield, who interviewed and conducted mediation sessions with department personnel. But these ended when Herried refused to participate because the whole department was not involved.
There were no further complaints until July 7, 1992. On this date, Washington bumped Herried with his body as she was standing in front of a filing cabinet. Herried drafted an incident report, and Nunan conducted interviews the following week with both Herried and Washington. Washington denied any knowledge of the accident.
On July 22 & 23, Marcie Ruskin, a "fair employment practices consultant," was brought in to address issues of race discrimination alleged by Washington. Ruskin found no racial discrimination, but suggested an immediate formal investigation into Herried's assault allegation. This investigation, which included tape-recorded interviews with 22 Pierce Transit employees, was conducted by Mary Ann Jackson (Director of Operations & Nunan's boss) and Willy Gorrissen (Director of Finance and Administration). The investigation resulted in an internal memorandum, which concluded that Washington had intentionally assaulted Herried. As a result, Washington was demoted, removed from the department, and warned that any further infractions would result in termination.
In October 1993, a year later, Herried encountered Washington in a hallway in Pierce Transit's main administration building. Washington refused to move aside as they passed, forcing her to press against the lockers. The two did not touch or exchange words.
Six days later, Herried reported the incident to Nunan. Herried also had a delayed emotional stress reaction to her situation and took three and one-half months medical leave.
Herried also described an incident in which a car stopped quickly behind her in the employee parking lot and followed her closely until she left the lot. Herried believed that Washington was the driver.
Herried received workers' compensation for all of the medical treatment and psychological counseling for injuries associated with the July 7, 1992, assault.
The Superior Court of Pierce County granted summary judgment for Pierce Transit on Herried's sexual harassment and negligent supervision claims. The court awarded prevailing party costs under RCW 4.84.010 and 4.84.090. These costs included the court reporter's appearance fee for Herried's deposition.

ANALYSIS
We will affirm a summary judgment only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. And we must consider all facts and reasonable inferences in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982); Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 12-13, 721 P.2d 1 (1986).

A. Sexual Harassment Claims
Herried first argues that the trial court erred in dismissing her sexual harassment claim under RCW 49.60.030. To establish a work environment sexual harassment claim, the employee must prove that: (1) the harassment was unwelcome; (2) the harassment was because of sex; (3) the harassment affected the terms or conditions of employment; and (4) the harassment is imputed to the employer. Glasgow v. Georgia-Pacific Corp., 103 Wash.2d 401, 406-07, 693 P.2d 708 (1985).
*770 1. Gender Related
Under the second element of the Glasgow test, conduct is only actionable as sexual harassment if it is because of sex. Glasgow, 103 Wash.2d at 406, 693 P.2d 708. This requires that the gender of the plaintiff-employee be the motivating factor for harassment. Glasgow, 103 Wash.2d at 406, 693 P.2d 708. Here, Herried failed to establish that her gender was the motivating factor for Washington's conduct. She points to Washington's intimidating behavior, his lifting weights at his desk, and his speaking to other instructors in a very threatening manner, particularly one of the female instructors, Krista Sheehy.
The record, however, demonstrates that Washington's hostility and his intimidating conduct were directed at other fellow employees, both male and female. Sheehy noted that "Washington's angry behavior and intimidating style was the same whether he was interacting with men or women." Herried herself never perceived any of Washington's actions to be sexual in nature. For example, she did not hear him tell dirty jokes, or say or do anything sexually suggestive. Furthermore, other employees never saw Washington do anything sexual in nature. An employee's conduct that is hostile and intimidating, without more, is not actionable as sexual harassment. See e.g. Miller v. Aluminum Co. of Am., 679 F.Supp. 495, 502 (W.D.Pa.1988) ("Hostile behavior that does not bespeak an unlawful motive cannot support a hostile work environment claim."), aff'd. without opinion, 856 F.2d 184 (3d Cir. 1988).
In Payne v. Children's Home Soc. of Wash., Inc., 77 Wash.App. 507, 892 P.2d 1102 (1995), Payne testified that her manager treated women more harshly than men, although he had verbally abused employees of both sexes. The court stated that "[t]he fact that discriminatory behavior is not directed at all members of plaintiff's gender is not fatal, so long as the plaintiff shows if she had been of the opposite gender, she would not have been so treated." Payne, 77 Wash.App. at 515, 892 P.2d 1102. Payne, however, had not submitted any affidavits from female employees supporting her allegations, and her own statements were conclusory and hearsay; thus, she failed to produce evidence sufficient to survive summary judgment. Here, Herried has failed to produce any evidence that Washington's harassment was directed toward her because of her sex.
2. Corrective Action
Herried has also failed to meet the fourth element of Glasgowimputing liability to Pierce Transit for Washington's conduct. To impute liability to Pierce Transit, Herried must show that Pierce Transit "(a) authorized, knew, or should have known of the harassment, and (b) failed to take reasonably prompt and adequate corrective action." Glasgow, 103 Wash.2d at 407, 693 P.2d 708. This element may be proven by showing "that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment." Glasgow, 103 Wash.2d at 407, 693 P.2d 708.
Pierce Transit took remedial action after each of Herried's complaints. In 1989, Pierce Transit hired consultant Ken Schultz, and Herried admitted during her deposition that the conflicts in the department "quieted down a little bit."
In 1990, when Herried complained to Steve Nunan, Nunan interviewed all current, and several former, members of the department. Nunan then distributed "expectations" for all personnel in the department, and met individually with each member to discuss the complaints both from and against that member. Pierce Transit also brought in another consultant, Pablo Stanfield. Although Stanfield's work was cut short when Herried refused to participate, there were no complaints in the department for two years.
The next incident was the assault in 1992. Herried admitted in an internal investigatory interview with Willy Gorrisen that she and Washington had gotten along "pretty good over the past couple years." After the assault, Herried did not immediately make her manager aware of how serious the assault was. When Pierce Transit became aware of the serious nature of the assault, it placed the entire department on paid administrative leave to prevent any further hostile conduct *771 and then thoroughly investigated. As a result of its investigation, Pierce Transit demoted Washington and removed him from the department. Pierce Transit also accommodated Herried's delayed emotional reaction to the incident by giving her three months paid medical leave.[1]
Thus, the record establishes without dispute that Pierce Transit acted promptly with investigations and recommendations reasonably calculated to resolve the conflicts between Herried and Washington. Herried has, therefore, not produced evidence sufficient to impute liability to Pierce Transit as Washington's employer.

B. Negligent Supervision Claims
Herried contends that the trial court erred in dismissing her negligent supervision claim.
We first note that part of Herried's negligent supervision claim is foreclosed by our ruling on her discrimination claims. Since Herried has not produced proof that she was the subject of gender-based discrimination, she cannot claim that Pierce Transit was negligent in supervising an employee who allegedly discriminated. What remains is an allegation of negligent supervision for Washington's non-discriminatory assault on Herried.
An employer can be liable for negligently supervising an employee. Thompson v. Everett Clinic, 71 Wash.App. 548, 555, 860 P.2d 1054 (1993). But Herried cites only to Thompson and Peck v. Siau, 65 Wash.App. 285, 827 P.2d 1108 (1992). Both cases involved claims by third persons against the employer, not an employee's claim against her own employer. Here, Herried asserts the claim against her own employer. And Pierce Transit argues that the Industrial Insurance Act affords it immunity for these claims by its employee.
With certain exceptions, the Industrial Insurance Act abolishes judicial jurisdiction over all civil actions for personal injuries arising between employees and the employers. Seattle First Nat'l Bank v. Shoreline Concrete Co., 91 Wash.2d 230, 242, 588 P.2d 1308 (1978). The only exceptions are for intentional injuries, RCW 51.24.020, or where the injuries are somehow separate from the physical injury. See, e.g., Reese v. Sears, Roebuck & Co., 107 Wash.2d 563, 731 P.2d 497 (1987); Wheeler v. Catholic Archdiocese of Seattle, 65 Wash.App. 552, 829 P.2d 196 (1992), rev'd. in part on other grounds, 124 Wash.2d 634, 880 P.2d 29 (1994).
Herried has not cited any cases dealing with exceptions to the Industrial Insurance Act or even specified what injuries she claims as a result of the "negligent supervision." Indeed, Herried does not cite or even mention the Industrial Insurance Actthe basis of the trial court's rulingin her brief. The appellate court need not consider issues that are not supported by argument or authority. State v. Farmer, 116 Wash.2d 414, 805 P.2d 200, 13 A.L.R. 5th 1070 (1991); American Legion Post No. 32 v. City of Walla Walla, 116 Wash.2d 1, 7, 802 P.2d 784 (1991).
When defendants prevail, the costs incurred in taking depositions specifically considered by the trial court in support of the summary judgment are taxable. Gearheart v. Shelton, 23 Wash.App. 292, 595 P.2d 67 (1979). The superior court stated that its decision was based in part on the materials submitted by these respondents, and on examination of the record. We believe the trial court must have considered the deposition. The costs were, thus, properly taxed. Spurrell v. Bloch, 40 Wash.App. 854, 871, 701 P.2d 529 (1985).
We affirm.
HOUGHTON, C.J., and MORGAN, J., concur.
NOTES
[1] Herried's medical bills incurred because of the incident have also been paid.