991 P.2d 1182 (2000)
98 Wash.App. 845
Kim FRANCOM and Neil Francom, Appellants,
v.
COSTCO WHOLESALE CORPORATION, a foreign corporation; and Gary Hathaway and "Jane Doe" Hathaway, husband and wife, and the marital community composed thereof, Respondents.
No. 18129-4-III.
Court of Appeals of Washington, Division 3, Panel Four.
January 13, 2000.
As Amended on Reconsideration February 29, 2000.
*1184 Tom Chambers, Tom Chambers & Associates, J. Andrew Hoyal, II, Seattle, for Appellants.
Stephen M. Rummage, Davis, Wright, Tremaine, Seattle, Steven M. Cronin, Mullin, Cronin, Casey & Blair, Spokane, for Respondents.
*1183 KATO, J.
Kim and Neil Francom appeal the summary dismissal of most of their claims in this suit involving Ms. Francom's former employer, Costco Wholesale Corporation. They contend they raised genuine factual issues supporting their claims for sexual harassment, retaliation, negligent infliction of emotional distress, negligent supervision and retention, breach of contract, and loss of consortium. They also contend the court improperly dismissed their claims against the alleged harasser's community assets. We affirm in part and reverse in part.
Ms. Francom was a part-time employee at Costco's warehouse store in downtown Spokane. Starting in 1992, she began working three days per week in the store's pharmacy and one day per week in security. When she worked in the pharmacy, her supervisor was Chris Willard, the pharmacist manager. When she worked in security, her supervisor was the store's administrative manager.
The Francoms allege that, beginning in July 1993, Ms. Francom was subjected to sexual comments and inappropriate touching by Gary Hathaway, who at the time was the warehouse's front end manager. Although Mr. Hathaway was not Ms. Francom's direct supervisor, she was required to work with him to obtain change for the pharmacy or when she worked in security and Mr. Hathaway was one of the managers responsible for closing the store.
Ms. Francom reported the incidents to Mr. Willard, who told her Mr. Hathaway's conduct was unprofessional but did not take any other action. After another incident on October *1185 21, 1993, Ms. Francom complained to the warehouse's assistant managers, who apparently reported it to Tom Olson, the warehouse's manager. Mr. Olson confronted Mr. Hathaway with Ms. Francom's allegations, as well as complaints by two other female employees. Mr. Hathaway denied the allegations in a memo dated October 28, 1993. Ms. Francom never worked with Mr. Hathaway again after October 21, 1993.[1]
Mr. Olson apparently turned the matter over to his superiors at Costco's regional office. John Gaherty, the company's northwest regional manager, believed there was no need for immediate action because of the approaching holiday shopping season and because both Ms. Francom and Mr. Hathaway were on medical leave at the time.
In early 1994, Costco's corporate ombudsman, Linda Dulan, conducted an investigation of the women's charges and recommended that Mr. Hathaway be fired immediately "on the grounds of sexual harassment per company policy." Ms. Dulan's report, dated January 31, 1994, stated: "The implications to the company if we fail to be consistent [with the company's policies] are quite serious." As an alternative, she suggested that Mr. Hathaway be demoted, transferred out of the Spokane warehouse, and ordered to undergo sexual harassment training and substance abuse treatment. Her minimum recommendation was that he undergo sexual harassment training and substance abuse treatment, but Ms. Dulan predicted this action would not be effective in light of Mr. Hathaway's denials.
Also in January 1994, Mr. Olson announced that the administrative manager would replace Mr. Hathaway as front end manager and that Mr. Hathaway would "be placed as our admin. mgr upon his return from surgery." Although Ms. Francom complained that Mr. Hathaway, as administrative manager, would be her supervisor, Mr. Olson stated later that the purpose of the memo was to let the staff know that a new manager would be taking Mr. Hathaway's place "running the front end." By that time, Mr. Olson said, he had "pretty much asked that he not come back and pretty much said he won't be back to our building."
Mr. Gaherty decided that, although Mr. Hathaway's conduct was not so serious as to require termination, he should be transferred because he made other employees uncomfortable in the Spokane warehouse. Shortly after Mr. Hathaway received his doctor's release to return to work in July 1994, Costco transferred him to the company's warehouse in Billings, Montana. He eventually was fired for theft.
Ms. Francom was on medical leave starting shortly after she complained formally to the warehouse's top managers. She worked briefly in February 1994, but went on medical leave again. When she returned to work again in February 1995, she was assigned to a less desirable work schedule. She stated Mr. Olson was rude to her on a daily basis. Ms. Francom also stated she saw Mr. Hathaway in the warehouse three or four times, but never spoke to him.
Ms. Francom believed Costco's treatment of Mr. Hathaway was not severe enough and he should have been fired. Mr. Olson allegedly told Ms. Francom that Mr. Hathaway was not someone to be "messed with" and that the police should be told about Mr. Hathaway if anything happened to her.
The Francoms sued Costco, Mr. Hathaway, and his wife, Sherry Hathaway.[2] The complaint alleged hostile work environment sexual harassment and retaliation in violation of Washington's Law Against Discrimination, RCW 49.60. It also alleged negligent retention and supervision, negligent infliction of emotional distress, breach of Costco's employment contract, and loss of consortium.
*1186 The superior court granted Costco's and Sherry Hathaway's motions for summary judgment, dismissing all claims against them. The only remaining claims are those against Gary Hathaway.[3]
Appellate review of an order granting summary judgment is the same as the superior court's. DeWater v. State, 130 Wash.2d 128, 133, 921 P.2d 1059 (1996); Kahn v. Salerno, 90 Wash.App. 110, 117, 951 P.2d 321, review denied, 136 Wash.2d 1016, 966 P.2d 1277 (1998). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The burden is on the moving party to establish its right to judgment as a matter of law, and facts and reasonable inferences from the facts are considered in favor of the nonmoving party. Id.
The party moving for summary judgment has the initial burden of showing there is no dispute as to any issue of material fact; but once that burden is met, the burden shifts to the non-moving party to establish the existence of an element essential to its case. Hiatt v. Walker Chevrolet Co., 120 Wash.2d 57, 66, 837 P.2d 618 (1992). "In order for a plaintiff alleging discrimination in the workplace to overcome a motion for summary judgment, the worker must do more than express an opinion or make conclusory statements." Marquis v. City of Spokane, 130 Wash.2d 97, 105, 922 P.2d 43 (1996) (citing Grimwood v. University of Puget Sound, Inc., 110 Wash.2d 355, 359-60, 753 P.2d 517 (1988)). To defeat summary judgment, the employee must establish specific and material facts to support each element of his or her prima facie case. Id. (citing Hiatt, 120 Wash.2d at 66-67, 837 P.2d 618).
Kahn, 90 Wash.App. at 117, 951 P.2d 321.
First, we consider whether the superior court properly dismissed the Francoms' claims against Costco for sexual harassment. Washington's Law Against Discrimination prohibits employment discrimination based on sex. RCW 49.60.180(3). Sex discrimination includes sexual harassment, which "unfairly handicaps an employee against whom it is directed in his or her work performance and as such is a barrier to sexual equality in the workplace." Glasgow v. Georgia-Pacific Corp., 103 Wash.2d 401, 405, 693 P.2d 708 (1985). The Francoms here seek to hold Costco responsible for creating or permitting sexual harassment in the form of a hostile work environment. The elements of a hostile work environment sexual harassment claim are: (1) unwelcome conduct, (2) based on sex, (3) affecting the terms and conditions of employment, and (4) imputed to the employer. Glasgow, 103 Wash.2d at 406-07, 693 P.2d 708. Agreeing the Francoms have established genuine factual issues regarding the first three elements, the parties here focus on the fourth element: whether Gary Hathaway's conduct may be imputed to Costco. Glasgow articulated the applicable rule as follows:
Where an owner, manager, partner or corporate officer personally participates in the harassment, this element is met by such proof. To hold an employer responsible for the discriminatory work environment created by a plaintiff's supervisor(s) or co-worker(s), the employee must show that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action. This may be shown by proving (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the work place as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment.[4] *1187 Glasgow, 103 Wash.2d at 407, 693 P.2d 708. This language clearly distinguishes between, on one hand, the class of persons so closely connected to the corporate management that their actions automatically may be imputed to the employer and, on the other hand, the employee's supervisors and co-workers whose actions alone may not be imputed directly to the employer.
This distinction marks the first battleground in this appeal. The Francoms contend Mr. Hathaway's conduct automatically is imputed to Costco because of his status as front end manager at Costco's Spokane warehouse. Their suggestion that Mr. Hathaway is a "manager" (as Glasgow used the term) because Costco fortuitously called him a manager is too simple. Obviously, if this were the law, an employer could avoid liability by calling its managers something else. The analysis must look to the functions and responsibilities of the person at issue.
The few Washington cases addressing this question do not reveal an easy formula. See DeWater, 130 Wash.2d at 136, 921 P.2d 1059 (no facts established harasser was "in management"); MacDonald v. Korurn Ford, 80 Wash.App. 877, 886, 912 P.2d 1052 (1996) (unexplained dictum, noting that car dealership's used-car manager and assistant used-car manager were "managers"); Schonauer v. DCR Entertainment, Inc., 79 Wash.App. 808, 822-23, 905 P.2d 392 (1995) (not addressing issue because nightclub shift manager knew of harassment), review denied, 129 Wash.2d 1014, 917 P.2d 575 (1996); Payne v. Children's Home Soc'y of Washington, Inc., 77 Wash.App. 507, 515, 892 P.2d 1102 (in dictum, noting that supervisor who had authority to evaluate, hire, and possibly fire employees may be a "manager"), review denied, 127 Wash.2d 1012, 902 P.2d 164 (1995); Thompson v. Berta Enters., Inc., 72 Wash.App. 531, 864 P.2d 983 (no discussion of whether store manager, who also was president of management corporation, was "manager" under Glasgow), review denied, 124 Wash.2d 1028, 883 P.2d 327 (1994); Delahunty v. Cahoon, 66 Wash.App. 829, 836-37, 832 P.2d 1378 (1992) (whether person is "manager" is factual question); Fisher v. Tacoma School Dist., 53 Wash.App. 591, 769 P.2d 318 (no discussion of whether head custodian, with no authority to hire and fire or to assign work, was "manager"), review denied, 112 Wash.2d 1027 (1989); Henderson v. Pennwalt Corp., 41 Wash.App. 547, 550-51, 704 P.2d 1256 (1985) (following Glasgow, holding trial court erred in instructing jury that employer was strictly liable for foreman's conduct).
The phrase "owner, manager, partner or corporate officer," although borne of federal law,[5] is derived ultimately from familiar agency principles. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 2267, 141 L.Ed.2d 633 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2285, 141 L.Ed.2d 662 (1998). In Ellerth, the Supreme Court relied on Restatement (Second) of Agency § 219(2)(a) (1957) for the proposition that an "employer acts with tortious intent, and indirect liability, where the agent's high rank in the company makes him or her the employer's alter ego." Ellerth, 524 U.S. 742, 118 S.Ct. at 2267, 141 L.Ed.2d 633. Other federal cases demonstrate the principle is limited to the high echelons of an employer's officers. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 19, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (corporation's president); Torres v. Pisano, 116 F.3d 625, 634-35 and n. 11 (2d Cir.) (mid-level manager not at a sufficiently high level in the company to impute his acts automatically to the employer), cert. denied, 522 U.S. 997, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997); *1188 Burns v. McGregor Elec. Indus., Inc., 955 F.2d 559, 564 (8th Cir.1992) (owner of company).
The facts of Ellerth and Faragher further demonstrate this principle. In Ellerth, the harasser was a vice president in one of five units within a division of the corporation, which employed more than 22,000 people at 50 sites. Ellerth, 118 S.Ct. at 2262. In Faragher, the harassers supervised employees' work, made daily assignments, and had no significant contact with their superiors. Faragher, 118 S.Ct. at 2280. In neither of these cases was there a serious contention that the supervisors occupied positions sufficiently high in the organizations' hierarchy as to impute their actions automatically to their employers.
Obviously, the line between "supervisor" and "manager" (as Glasgow used the term) at some point will become fine. But wherever the line is drawn, the federal cases indicate Mr. Hathaway was not a "manager." Although he supervised and even hired other employees, it is undisputed that Mr. Hathaway was simply a mid-level manager at one of Costco's 200 warehouses. At that level, he clearly was not acting as Costco's alter ego. We reject the Francoms' contention that Costco is automatically liable for Mr. Hathaway's acts.
The Francoms also contend, however, that Costco is liable for Mr. Hathaway's acts because it "knew, or should have known of the harassment and ... failed to take reasonably prompt and adequate corrective action." Glasgow, 103 Wash.2d at 407, 693 P.2d 708. They argue first that Costco failed to take adequate or prompt action after Mr. Olson was informed of the harassment in late October 1993.[6] It is true that Costco did not discipline Mr. Hathaway until July 1994, when it transferred him out of the Spokane warehouse. However, both Mr. Hathaway and Ms. Francom were on medical leave at different periods during that time, and it is undisputed they never again worked in the Spokane warehouse at the same time. As Mr. Gaherty recognized, there was no need for immediate action because neither of the employees was working. Whatever the purpose of Mr. Olson's memo naming Mr. Hathaway as the administrative manager, the fact is that Ms. Francom never was subjected to additional sexual harassment as a result of it. Ms. Francom's dissatisfaction with the severity of Costco's response is not evidence the response was unreasonable. See Portera v. Winn Dixie of Montgomery, Inc., 996 F.Supp. 1418, 1428 (M.D.Ala.1998). Costco was required only to take whatever action was reasonably likely to prevent further harassment. See Knabe v. Boury Corp., 114 F.3d 407, 414 (3rd Cir. 1997); Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 536 (7th Cir. 1993). The fact that the conduct never occurred again after October 1993 is proof that Costco's response was reasonable and adequate as a matter of law.
The Francoms also contend Costco was required to take remedial action before October 1993. Under Glasgow, remedial action is required either when complaints are made "through higher managerial or supervisory personnel or [when there is] such a pervasiveness of sexual harassment at the work place as to create an inference of the employer's knowledge or constructive knowledge of it." Glasgow, 103 Wash.2d at 407, 693 P.2d 708.
As evidence of pervasiveness, the Francoms rely in part on Mr. Hathaway's conduct at an off-site company party in August 1993. At that party, an assistant manager of the warehouse saw Mr. Hathaway fondle the buttocks of a female employee. Mr. Olson also was aware of the incident. In addition, a female manager had complained *1189 that she was not comfortable working with Mr. Hathaway, although she did not say this was because of sexual harassment. Another female employee also complained to Mr. Olson about Mr. Hathaway's inappropriate sexual comments to her. She said Mr. Olson asked her to put her complaints in writing, which she did, and comments ceased.
Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law. The harassment must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. Whether the harassment at the work place is sufficiently severe and persistent to seriously affect the emotional or psychological well being of an employee is a question to be determined with regard to the totality of the circumstances.
Glasgow, 103 Wash.2d at 406-07, 693 P.2d 708; see Faragher, 118 S.Ct. at 2283-84; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S.Ct. 998, 1002-03, 140 L.Ed.2d 201 (1998). Under Title VII, the conduct need not be so severe as to be psychologically injurious, "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile or abusive." Harris, 510 U.S. at 22, 114 S.Ct. 367.
The incidents on which the Francoms rely here are insufficient to demonstrate the existence of a pervasively abusive working environment. These isolated incidents do not prove the workplace was perceived to be so sexually hostile that they altered the working environment.
The Francoms also contend, however, that Costco had actual or constructive knowledge of Mr. Hathaway's conduct when Ms. Francom discussed it with her supervisor, pharmacist manager Chris Willard. Ms. Francom said she told Mr. Willard about the incidents immediately after the incidents began in July 1993. Mr. Willard told her another employee also was having problems with Mr. Hathaway, who he said was very unprofessional. He had concerns about the safety of Ms. Francom, but Mr. Willard never took any action to prevent further harassment.
Although Costco contends the incidents with Mr. Hathaway were not so serious as to constitute sexual harassment, the evidence, viewed in a light most favorable to the Francoms, raises at least a triable factual question. A more difficult question is whether Ms. Francom's discussions with Mr. Willard were reports to "higher managerial or supervisory personnel," Glasgow, 103 Wash.2d at 407, 693 P.2d 708, that establish an inference of Costco's constructive knowledge. The parties have not cited (nor have we found) any Washington authority on the question of who, within an employer's hierarchy, must receive notice in order for the employer to be deemed to have received knowledge of harassment.
Costco relies on federal cases holding that the harassment must be reported to someone "`at a sufficiently high level in the [employer's] hierarchy,'" Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996) (quoting Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 64 (2d Cir.1992)) or to "management level" employees, Nichols v. Frank, 42 F.3d 503, 508 (9th Cir.1994); Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir.1990). See generally Stanford E. Purser, Note, Young v. Bayer Corp.: When is Notice of Sexual Harassment to an Employee Notice to the Employer?, 1998 B.Y.U. L.Rev. 909, 919-20 (1998). But these cases present at least two problems: First, they require a scrutiny of the details of an employer's chain of command with no meaningful standards for drawing the line. Second, they fail to recognize that a particular employer may purposely and legitimately designate someone outside the high levels of management to receive and investigate allegations of harassment. The Seventh Circuit recently adopted a more logical approach:

*1190 [T]he information must either (1) come to the attention of someone who (a) has under the terms of his employment, or (b) is reasonably believed to have, or (c) is reasonably charged by law with having, a duty to pass on the information to someone within the company who has the power to do something about it; or (2) come to the attention of such a someone.
Young v. Bayer Corp., 123 F.3d 672, 674 (7th Cir.1997); see Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027, 1035 (7th Cir.1998). At least two other federal circuits have followed the Seventh Circuit's lead. See Wilson v. Tulsa Junior College, 164 F.3d 534, 542 (10th Cir.1998); Williamson v. City of Houston, 148 F.3d 462, 467 (5th Cir.1998). The Young court explained its reasoning:
Many companies appoint a "point person," usually in the personnel or (as it is nowadays often called) human resources department, to be the recipient of charges of harassment. If identified to and accessible to potential complainants, this person becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case. Whether and in what circumstances a company can make this the exclusive channel for complaints about harassment we need not decide in this case; but what is certain is that if the company fails to establish a clearly marked, accessible, and adequate channel for complaints, judicial inquiry will have to turn to who in the company the complainant reasonably believed was authorized to receive and forward (or respond to) a complaint of harassment. A department head would ordinarily be such a someone with regard to complaints of misconduct lodged by a worker in his department. If he receives such a complaint he would be obligated by elementary principles of management and good sense either to resolve the problem himself or to refer it to someone else within the company, who can.
Focus on whether the information comes to the attention of someone who ought by specification of his duties or, failing that, general norms of management to do something about it, either directly or by referring the matter to some other corporate employee, is a better, because a more concrete, a more practical, approach than asking at what level in a corporate hierarchy an employee "is" the corporation. Except in some closely held corporations, no single employee is the corporation (and anyway a corporation with only one employee would be exempt from Title VII, see 42 U.S.C. § 2000e(b)), so the approach we are criticizing is in quest of something that does not exist, making it "metaphysical" in a pejorative sense. What is possible to identify is who has the authority to terminate the harassment of which the plaintiff is complaining and did the plaintiff complain to someone who could reasonably be expected to refer the complaint up the ladder to the employee authorized to act on it. These two questions should guide the inquiry in cases in which the question is whether the plaintiff placed her complaint in a proper channel.
Young, 123 F.3d at 674-75.
Here, Costco's employee handbook contained a statement prohibiting sexual harassment and provided:
If you feel the above policy is in any way violated, we encourage you to speak with your Supervisor or Warehouse Manager or Vice President of Operations or Home Office Personnel as appropriate.
The handbook therefore clearly authorized employees to report harassment to their supervisors, among others. It is undisputed that Mr. Willard was Ms. Francom's supervisor. Having expressly established the procedure, Costco may not claim her report to him was ineffective.
Costco contends, however, that Ms. Francom's discussions with Mr. Willard were not reports of harassment that she expected to be brought to the attention of someone who had the authority to do something about it. This argument misperceives the analytical context. Regardless of Ms. Francom's intent, her discussions with Mr. Willard, *1191 viewed in a light most positive to the Francoms, gave Costco constructive knowledge of Mr. Hathaway's conduct.
It is undisputed that Costco took no action before late October 1993. From this evidence, a factfinder could conclude Costco had constructive knowledge of Mr. Hathaway's conduct and failed to take reasonably prompt and adequate corrective action. The superior court erred in dismissing the Francoms' harassment claim.
Next, we consider whether the superior court properly dismissed the Francoms' claim against Costco for retaliation. The law against discrimination prohibits retaliation against a person because that person opposed practices forbidden by the act. RCW 49.60.210(1). To establish a prima facie case for retaliation, a plaintiff must show that (1) he or she engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there is a causal link between the employee's activity and the employer's adverse action. Delahunty v. Cahoon, 66 Wash.App. 829, 839, 832 P.2d 1378 (1992). The plaintiff need not show that retaliation was the only or "but for" cause of the adverse employment action, but he or she must establish that it was at least a substantial factor. Allison v. Housing Auth., 118 Wash.2d 79, 85-96, 821 P.2d 34 (1991).
"Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose." Vasquez v. State, 94 Wash.App. 976, 985, 974 P.2d 348, review denied, 138 Wash.2d 1019, 989 P.2d 1143 (1999); see Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 69, 821 P.2d 18 (1991); Kahn v. Salerno, 90 Wash.App. 110, 130, 951 P.2d 321, review denied, 136 Wash.2d 1016, 966 P.2d 1277 (1998). One factor supporting retaliatory motivation is proximity in time between the protected activity and the employment action. Wilmot, 118 Wash.2d at 69, 821 P.2d 18.
Ms. Francom engaged in protected activity by reporting Mr. Hathaway's conduct in October 1993. The Francoms contend Costco took two adverse employment actions against her when she returned to work after a medical leave in February 1995: It limited her working day to four hours, and it gave her an undesirable work schedule.
Assuming for the sake of our analysis that these scheduling decisions were adverse employment actions, the Francoms have failed to establish proof that the actions were related in any way to Ms. Francom's complaints about Mr. Hathaway 15 months earlier. In fact, the record shows Ms. Francom's own doctor restricted her to four-hour shifts in January 1995, and this restriction continued until she left Costco permanently in April 1995. There is no merit to the Francoms' argument that Costco had a retaliatory motive in restricting Ms. Francom to four-hour shifts. As for the undesirable work schedule, Mr. Olson stated Ms. Francom's medical restrictions, combined with other employees' seniority and Costco's seasonal work slowdown, required it to schedule unconsecutive days off.
The Francoms contend that, although 15 months passed between Ms. Francom's complaint and the scheduling changes, she worked very little during that time and Costco retaliated shortly after she returned. See Smith v. St. Louis Univ., 109 F.3d 1261, 1266 (8th Cir.1997) (passage of time may reflect that employer had no opportunity to retaliate during that period). But the record shows she did work for a few weeks in the intervening period, during which time Costco had an opportunity to retaliate. However, the Francoms do not allege Costco took any retaliatory actions during that time. Under the circumstances, there is no proximity in time suggesting a nexus between her complaint and the scheduling changes.
The Francoms finally rely on two other events that they contend suggest Costco's retaliatory motives. First, they allege Mr. Olson conducted a perfunctory or "sham" investigation. They do not explain how such an investigation in late 1993 could be evidence of Costco's motivation more than a year later. Second, the Francoms allege co-workers *1192 and Mr. Olson made hostile and rude remarks to Ms. Francom. While these remarks may demonstrate some animus toward Ms. Francom, they establish only a speculative connection to the undesirable work schedule. Particularly in light of unrebutted evidence of Ms. Francom's own medically related work limitations, the Francoms have failed to raise more than a "metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
The court properly dismissed the Francoms' retaliation claim.
Next, we consider whether the superior court properly dismissed the Francoms' claim against Costco for negligent infliction of emotional distress. A "defendant has a duty to avoid the negligent infliction of mental distress." Hunsley v. Giard, 87 Wash.2d 424, 435, 553 P.2d 1096 (1976). The claim can exist in an employment context. Chea v. Men's Wearhouse, Inc., 85 Wash. App. 405, 412, 932 P.2d 1261, 971 P.2d 520 (1997), review denied, 134 Wash.2d 1002, 953 P.2d 96 (1998). However, this court recently held:
The utility of permitting employers to handle workplace disputes outweighs the risk of harm to employees who may exhibit symptoms of emotional distress as a result. The employers, not the courts, are in the best position to determine whether such disputes should be resolved by employee counseling, discipline, transfers, terminations or no action at all. While such actions undoubtedly are stressful to impacted employees, the courts cannot guarantee a stress-free workplace. Therefore, we hold that absent a statutory or public policy mandate, employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes.
Bishop v. State, 77 Wash.App. 228, 234-35, 889 P.2d 959 (1995) (footnote omitted); see Johnson v. Department of Social & Health Servs., 80 Wash.App. 212, 230, 907 P.2d 1223 (1996).
Here, the Francoms allege Ms. Francom's emotional distress was a result of Mr. Hathaway's conduct and of Costco's "campaign of harassment ... when she attempted to obtain justice." To the extent the Francoms refer to Costco's response to Ms. Francom's complaints, their claim is not compensable under Bishop.
An additional question is whether a plaintiff may maintain a separate claim for negligent infliction of emotional distress, based on the same facts that support her claim under the law against discrimination, which permits damages for emotional injuries. See Dean v. Municipality of Metropolitan Seattle-Metro, 104 Wash.2d 627, 640-41, 708 P.2d 393 (1985). Because the law will not permit a double recovery, a plaintiff will not be permitted to be compensated twice for the same emotional injuries. See Johnson, 80 Wash.App. at 230-31, 907 P.2d 1223. However, when a plaintiff alleges that non-discriminatory conduct caused separate emotional injuries, he or she may maintain a separate claim for negligent infliction of emotional distress. Chea, 85 Wash.App. at 413-14, 932 P.2d 1261. But here, the Francoms' separate claim for emotional distress arises directly from Mr. Hathaway's harassment, which they allege was discrimidle The claim thus is duplicative. The superior court properly dismissed it.
Next, we consider whether the superior court properly dismissed the Francoms' claims against Costco for negligent retention or supervision. "An employer can be liable for negligently supervising an employee." Herried v. Pierce County Pub. Transp. Benefit Auth. Corp., 90 Wash.App. 468, 475, 957 P.2d 767 (citing Thompson v. Everett Clinic, 71 Wash.App. 548, 555, 860 P.2d 1054 (1993), review denied, 123 Wash.2d 1027, 877 P.2d 694 (1994); Peck v. Siau, 65 Wash.App. 285, 827 P.2d 1108, review denied, 120 Wash.2d 1005, 838 P.2d 1142 (1992)), review denied, 136 Wash.2d 1005, 966 P.2d 901 (1998). Costco contends, however, that this liability extends only to third persons, not to fellow employees.
With certain exceptions, the Industrial Insurance Act abolishes judicial jurisdiction over all civil actions for personal injuries *1193 arising between employees and the employers. Seattle First Nat'l Bank v. Shoreline Concrete Co., 91 Wash.2d 230, 242, 588 P.2d 1308 (1978). The only exceptions are for intentional injuries, RCW 51.24.020, or where the injuries are somehow separate from the physical injury. See, e.g., Reese v. Sears, Roebuck & Co., 107 Wash.2d 563, 731 P.2d 497 (1987)[, overruled on other grounds by Phillips v. City of Seattle, 111 Wash.2d 903, 766 P.2d 1099 (1989)]; Wheeler v. Catholic Archdiocese of Seattle, 65 Wash.App. 552, 829 P.2d 196 (1992), rev'd in part on other grounds, 124 Wash.2d 634, 880 P.2d 29 (1994).
Herried, 90 Wash.App. at 476, 957 P.2d 767.
Costco's argument fails to acknowledge the exception Herried itself recognized. In Wheeler v. Catholic Archdiocese of Seattle, 65 Wash.App. 552, 829 P.2d 196 (1992), rev'd in part on other grounds, 124 Wash.2d 634, 880 P.2d 29 (1994), the plaintiff obtained a jury award against her employer for emotional injuries resulting from handicap discrimination, retaliation, and negligent supervision. Wheeler, 65 Wash.App. at 560, 829 P.2d 196. The court held the Industrial Insurance Act did not bar the negligent supervision claim because the plaintiff's emotional injury was not an "injury" or "occupational disease" as defined by the statute. Id. at 566-68, 829 P.2d 196. Similarly here, the Francoms' claim for emotional injuries resulting from Costco's allegedly negligent supervision or retention of Mr. Hathaway is not barred by the Industrial Insurance Act.
However, in Wheeler the employer's liability for handicap discrimination was based on its failure to rehire the plaintiff to positions for which she was qualified. Id. at 561-65, 829 P.2d 196. Her claim for negligent supervision was based on entirely different facts showing she was harassed by a supervisor. Id. at 565-66, 829 P.2d 196.
Here, by contrast, the Francoms rely on the same facts to support both their discrimination claim and their negligent supervision or retention claim. Just as with their claim for negligent infliction of emotional distress, the claim is duplicative, and the superior court properly dismissed it.
Next, we consider whether the superior court properly dismissed the Francoms' claims against Costco for breach of a promise in its employee handbook, which stated:
Costco prohibits sexual harassment of its employees by other employees or outside parties. Sexual harassment negatively affects morale, motivation, and job performance. It is inappropriate, offensive, and illegal and will not be tolerated.
The handbook also encouraged employees to report harassment to "your Supervisor or Warehouse Manager or Vice President of Operations or Home Office Personnel as appropriate."
The Francoms contend this language creates a contract-based obligation, which Costco breached by permitting Mr. Hathaway to harass her. The Supreme Court has recognized that employee policy manuals may create obligations:
[I]f an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship. We believe that by his or her unilateral objective manifestation of intent, the employer creates an expectation, and thus an obligation of treatment in accord with those written promises. See Restatement (Second) of Contracts § 2 (1981) (promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding a commitment has been made).
It may be that employers will not always be bound by statements in employment manuals. They can specifically state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship and are simply general statements of company policy. Additionally, policy statements as written may not amount to promises of specific treatment and merely be general statements of company policy and, thus, not binding. Moreover, the employer may specifically reserve a right to modify those policies or *1194 write them in a manner that retains discretion to the employer.
Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 230-31, 685 P.2d 1081 (1984).
In this case, Costco's employment handbook was a general policy statement condemning sexual harassment. In contractual terms, it obligated Costco only to comply with the law, and thus was an illusory promise unsupported by consideration. See Crown Plaza Corp. v. Synapse Software Sys., Inc., 87 Wash.App. 495, 501, 962 P.2d 824 (1997).
The Francoms contend Costco's handbook obligated it to go beyond the requirements of the law because it included a procedure for reporting violations, which the law does not require. But the reporting procedure was merely Costco's attempt to comply with the law by providing a procedure for employees to obtain relief from violations. The policy does not promise any specific treatment of employees in specific situations, and thus did not create any obligation by Costco to do anything other than comply with the law prohibiting sexual harassment.
The court properly dismissed the Francoms' contract-based claim.
Next, we consider whether the superior court properly dismissed the Francoms' claims against the community of Gary and Sherry Hathaway. Both the Francoms and Sherry Hathaway have briefed the issue whether Gary Hathaway may be liable individually for his harassment of Ms. Francom. However, the superior court has not yet decided that issue and it is inappropriate to address it here. Our analysis therefore assumes Mr. Hathaway may be held liable individually. The question is whether the marital community of Gary and Sherry Hathaway may be held liable for Mr. Hathaway's conduct.[7]
In general, community assets are exempt from separate tort judgments unless "the act occurred (1) in the course of managing community property, or (2) for the benefit of the marital community." Keene v. Edie, 131 Wash.2d 822, 829, 935 P.2d 588 (1997). The Supreme Court has recently criticized this rule as "often produc[ing] `illogical, inconsistent and unjust results,' due to courts' inability to consistently determine whether a spouse's actions served to benefit the community." Id. at 829, 935 P.2d 588 (quoting deElche v. Jacobsen, 95 Wash.2d 237, 242, 622 P.2d 835 (1980)).
The Francoms contend the Hathaway community is liable because Gary Hathaway's acts were committed at work, and thus were in the course of managing community property or were for the benefit of the marital community. It is clear that the harassment itself was not for the benefit of or in the course of managing the community. In Farman v. Farman, 25 Wash.App. 896, 611 P.2d 1314 (1980), appeal dismissed, 95 Wash.2d 1034 (1981), a wife made harassing telephone calls to her husband's former wife. The court held there was no community liability:
[C]ommunity liability cannot attach under the theory of community benefit when, from the perspective of a reasonable person, the wrongful acts in question are unlikely to produce the desired community result. A reasonable person could not believe that the anonymous telephone calls involved in this case would have the result of strengthening or prolonging the marriage.... The opposite effect might just as likely result.
Farman, 25 Wash.App. at 902, 611 P.2d 1314 (citation omitted).
The Francoms contend, however, that Mr. Hathaway's employment at Costco was a part of managing the community and for the benefit of the community. But sexual harassment at the workplace certainly was not within the scope of Mr. Hathaway's employment. See Bratton v. Calkins, 73 Wash. *1195 App. 492, 500-01, 870 P.2d 981 (school district not vicariously liable for teacher's sexual relationship with student because conduct was outside scope of employment), review denied, 124 Wash.2d 1029, 883 P.2d 326 (1994); Thompson v. Everett Clinic, 71 Wash.App. 548, 553, 860 P.2d 1054 (1993) (clinic not vicariously liable for doctor's sexual assault of patient because act was outside scope of employment), review denied, 123 Wash.2d 1027, 877 P.2d 694 (1994); see also Reno v. Baird, 18 Cal.4th 640, 646, 957 P.2d 1333, 76 Cal.Rptr.2d 499 (1998) ("Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job"). Whatever Mr. Hathaway's reasons for his conduct, they were not job related but were solely to gratify his personal objectives or desires. See Thompson, 71 Wash.App. at 553, 860 P.2d 1054.
Because the acts were outside the scope of Mr. Hathaway's employment at Costco, there is no merit to the Francoms' argument that his marital community should be liable for them. The superior court properly dismissed the Francoms' claim against the community of Gary and Sherry Hathaway.
Finally, we consider whether Mr. Francom's loss of consortium claim should be reinstated. Loss of consortium is a separate, not derivative, claim. Green v. A.P.C. (American Pharmaceutical Co.), 136 Wash.2d 87, 101, 960 P.2d 912 (1998). However, there can be no claim for loss of consortium if no legal wrong has been committed against the impaired spouse.[8]Conradt v. Four Star Promotions, Inc., 45 Wash.App. 847, 853, 728 P.2d 617 (1986). Here, the superior court dismissed Mr. Francom's loss of consortium claim because it was also dismissing all of the Francoms' remaining claims against Costco.[9] In light of our conclusion the sexual harassment claim should be reinstated, we also hold the loss of consortium claim should be reinstated.
The superior court's dismissal of the Francoms' sexual harassment and loss of consortium claims is reversed. The court's dismissal of the other claims is affirmed.
SWEENEY, A.C.J., and SCHULTHEIS, J., concur.
NOTES
[1] Ms. Francom injured her shoulder and had surgery on October 26, 1993. She was off work until February 1, 1994. She worked intermittently until April 1995, when she had another surgery and was declared totally disabled. Meanwhile, Mr. Hathaway himself was on medical leave for about six months beginning in December 1993. He was transferred out of the Spokane warehouse shortly after receiving his doctor's release to return to work in July 1994.
[2] Gary and Sherry Hathaway were married at the time of the events at issue here. They were divorced in 1997.
[3] On the Francoms' motion, the superior court entered findings permitting entry of final judgment. See RAP 2.2(d).
[4] The Francoms urge this court to adopt the United States Supreme Court's recent articulation of the federal standard for determining an employer's vicarious liability for harassment by "a supervisor with immediate (or successively higher) authority over the employee." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); see Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2278, 141 L.Ed.2d 662 (1998). It is unnecessary to address this issue because there is no evidence Mr. Hathaway was "a supervisor with immediate ... authority" over Ms. Francom.
[5] "Interpretations of Title VII, § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (1982) are not binding on this court, but are instructive and lend support to our decision herein." Glasgow, 103 Wash.2d at 406 n. 2, 693 P.2d 708.
[6] The Francoms also contend Mr. Olson rebuffed Ms. Francom's earlier attempts to raise the issue with him. However, Ms. Francom admitted she did not tell Mr. Olson that she had concerns about sexual harassment generally or Mr. Hathaway specifically. In fact, Mr. Olson's response was that she should "document" her concerns. There is no indication she actually complained to the assistant managers or to Mr. Olson until late October 1993.
[7] Assuming he is found individually liable, the law already would permit the Francoms to recover against Mr. Hathaway's separate property and his one-half interest in the community's real and personal property. See Keene v. Edie, 131 Wash.2d 822, 935 P.2d 588 (1997); deElche v. Jacobsen, 95 Wash.2d 237, 622 P.2d 835 (1980). The issue here is whether the Francoms may recover against the community itself, as an entity, and thus presumably against Sherry Hathaway's interest in the community assets. But see Keene, 131 Wash.2d at 834, 935 P.2d 588 (rejecting "so-called entity theory" of community property).
[8] The spouse who suffers bodily injury is called the "impaired spouse" and the spouse who suffers a loss of services and society is called the "deprived spouse." Reichelt v. Johns-Manville Corp., 107 Wash.2d 761, 773, 733 P.2d 530 (1987).
[9] Costco also contends on appeal that Mr. Francom's claim is invalid because Ms. Francom did not suffer bodily injury. However, the superior court was not asked to decide and did not decide whether a bodily injury was required or whether Ms. Francom had proven such an injury. We therefore do not consider the argument here. See RAP 2.5(a).