76 F.3d 388
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lisa RITZERT-SMITH, Plaintiff-Appellant,
v.
SIEMENS NUCLEAR POWER CORPORATION; and Advanced Nuclear
Fuels Corporation, Defendants-Appellees.
 No. 94-35905.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 15, 1995.*
Decided Dec. 11, 1995.
 
 Before: WRIGHT, FERNANDEZ and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ritzert-Smith, a female employee of Siemens, alleged that she was paid less than her coworkers for equal work in violation of the Equal Pay Act, that she was subjected to a hostile work environment in violation of the Washington Law Against Discrimination, and that the company retaliated against her for filing this action. The district court granted summary judgment to Siemens and we review de novo. We affirm.
 
 I. Equal Pay
 
 3
 Ritzert-Smith argues that Siemens violated the Equal Pay Act, 29 U.S.C. § 206(d)(1), by paying her less than three of her male coworkers. She has made a prima facie case of wage discrimination: she was paid less than three men in her work group, each of whom had the same responsibilities as she. Forsberg v. Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1414 (9th Cir.1988) (plaintiff bears burden of establishing unequal pay for equal work).
 
 A. Siemens' Affirmative Defense
 
 4
 Siemens countered that the pay disparity was based on a "factor other than sex." 29 U.S.C. § 206(d)(1)(iv). Siemens has the burden of proof on this issue. Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974).
 
 
 5
 We have carefully reviewed Ritzert-Smith's performance evaluations, in which she received consistently unfavorable reviews for "teamwork and cooperation." We have also scrutinized Siemens' employment policies, including its job classification system and its decision to red-circle some employees' salaries, its employee evaluation system, and its promotion and compensation policies. These legitimate, gender-neutral policies, along with Ritzert-Smith's evaluations, explain fully the pay disparity. See Kouba v. Allstate Ins. Co., 691 F.2d 873, 877 (9th Cir.1982) (Equal Pay Act preserves bona fide job evaluation systems); see also Strecker v. Grand Forks Cty. Social Svc. Bd., 640 F.2d 96, 101-03 (8th Cir.1980) (employer who demonstrated that wage disparity was due to neutrally applied job classification system was entitled to summary judgment), overruled on other grounds, Pullman-Standard v. Swint, 456 U.S. 273 (1982); see also Aldrich v. Randolph Central Sch. Dist., 963 F.2d 520, 525 (2d Cir.1992) (to be valid defense, job classifications must be based on legitimate, business-related concerns). Assuming that Ritzert-Smith's annual evaluations are untainted by sex discrimination, the difference between her pay and her comparators' pay is due to "factor[s] other than sex."
 
 B. Discriminatory Evaluations
 
 6
 Ritzert-Smith attempts to raise a fact issue regarding Siemens' explanation of the pay disparity: she argues that her supervisors were biased against her. If this were so, a genuine issue of fact could exist as to whether Ritzert-Smith's sex affected her compensation. See Fadhl v. City and County of San Francisco, 741 F.2d 1163, 1165 (9th Cir.1984) (liability imposed where plaintiff's termination was "ostensibly" grounded on poor performance but evaluators exhibited bias). Ritzert-Smith offers several examples to show that her evaluators were biased.[1]
 
 1. Double standard
 
 7
 She claims that male employees were not criticized for their hostile behavior, but she was. As she gives no valid, comparable examples to demonstrate this conclusory statement, it does not create a genuine issue of material fact.[2] See Forsberg, 840 F.2d at 1419 (conclusory allegations will not bar summary judgment).
 
 2. Remark of John Phillips
 
 8
 It is possible to infer that Ritzert-Smith's supervisor Phillips harbored some gender bias based on the 1982[3] incident during which he told her to "tape [two skullcaps] together and use them for a bra." The record does not, however, reflect any connection between Phillips and Ritzert-Smith's limited pay raises and loss of promotion to Senior Tech.
 
 
 9
 Phillips prepared her 1982 evaluation. That year, she was a Tech II. The next year, on schedule, she advanced to Tech III and received a corresponding pay increase. There is no evidence that Phillips contributed to her evaluations from 1983 to 1992.[4] It was those evaluations that prevented her promotion to Senior Tech and determined her salary during the period at issue.
 
 3. Remark of Leland Stephens
 
 10
 According to Ritzert-Smith's affidavit, Mr. Stephens, who prepared most of her performance evaluations, told her in 1986, "You remind me of my wife. I cannot do anything about her, but I can definitely do something about you."
 
 
 11
 She argues that this remark is evidence of Stephens' discriminatory mindset. Without context, it is impossible to determine whether this comment derived from gender bias at all. " 'Stray' remarks are insufficient to establish discrimination." Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir.1990) (quotation omitted); see also Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir.1993) (discriminatory remark "uttered in an ambivalent manner" and "not tied directly" to employment decision was at best "weak circumstantial evidence of discriminatory animus" and insufficient to defeat summary judgment).
 
 4. Behavior of Marion Hill
 
 12
 Ritzert-Smith's claims regarding Mr. Hill, General Supervisor of the Chemical Operations Group and her indirect supervisor, are more troubling. Her account of his behavior, which we assume is true for purposes of summary judgment, would show that he made offensive remarks and jokes relating to her sex.
 
 
 13
 Siemens argues that Hill's attitude is irrelevant because he did not evaluate Ritzert-Smith. Although it is true that he did not sign the evaluations until after her direct supervisors had completed them and reviewed them with her, his affidavit indicates that he had some responsibility for her reviews.
 
 
 14
 Even so, we find scant evidence to support Ritzert-Smith's contention, tenuous to begin with, that she received low marks for cooperation and teamwork and in turn did not progress at the company, because of Hill's alleged bias. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted). Siemens has presented consistent performance evaluations for 13 years, nearly all of which voice the same complaint: Ritzert-Smith was rude and contemptuous of coworkers. Her poor ratings came from several supervisors over the years. The same criticisms appeared in years in which Hill did not sign the evaluations as in years that he did, and continued after he retired.
 
 
 15
 We are mindful that it is Siemens' burden to prove that its compensation decisions were based on factors other than sex, Corning, 417 U.S. at 196-97; nevertheless, we do not find that Ritzert-Smith has shown a causal link between discriminatory conduct and her salary that would cast doubt on Siemens' gender-neutral explanation of the pay disparity. Summary judgment was appropriate: a reasonable jury could not fail to find by a preponderance of the evidence that Siemens' wage decisions were based on factors other than sex. See Anderson, 477 U.S. at 252.
 
 II. Hostile Work Environment
 
 16
 Ritzert-Smith next contends that the court erred in granting summary judgment on her state-law hostile work environment claim, Wash.Rev.Code § 49.60.180(3). To establish a prima facie case of sex discrimination under this theory, she must show that her work environment would "reasonably be perceived, and is perceived, as hostile or abusive." Harris v. Forklift Systems, Inc., 114 S.Ct. 367, 371 (1993). The discriminatory conduct must be " 'sufficiently severe or pervasive to alter the conditions of the victim's employment ...' ". Id. at 370 (quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986)). Some factors that would indicate whether the environment is hostile are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 371.
 
 
 17
 The plaintiff has the burden of establishing the severity and persistence of the harassment of which she complains. Payne v. Children's Home Soc. of Wash., Inc., 77 Wn.App. 507, 515, 892 P.2d 1102, 1107 (1995). Ritzert-Smith attempts to meet this burden by pointing to Hill's comments and behavior and to an episode of coworker harassment.
 
 A. Behavior of Hill
 
 18
 In this context, as in the equal pay context, the behavior attributed to Hill is disturbing. His comments are, however, "mere offensive utterance[s]." Harris, 114 S.Ct. at 371. And Ritzert-Smith does not establish when or how often Hill made the comments she relates. Id. (frequency of harassment is a factor to be weighed in determining whether hostile work environment exists). Hill was not her direct supervisor; there is nothing in the record to suggest they had regular contact. Id. (harassment must be "pervasive enough" to affect working conditions). Finally, it is unclear whether Hill was a management-level employee, so that his conduct is directly attributable to Siemens, or a lower-level supervisor whose conduct is actionable only if Siemens had knowledge of it and did not take appropriate steps to remedy the situation. Glasgow v. Georgia-Pacific Corp., 103 Wn.2d 401, 406, 693 P.2d 708, 712 (1985) (plaintiff has burden of showing that conduct can be imputed to employer).
 
 B. Coworker Harassment
 
 19
 The 1990 episode[5] in which two coworkers displayed Ritzert-Smith's bra, though arguably significant, was isolated. "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law." Id.; see also Candelore v. Clark Cty. Sanitation Dist., 975 F.2d 588, 590 (9th Cir.1992) ("isolated incidents of sexual horseplay" do not amount to a hostile work environment). This single incident is not enough, by itself or in conjunction with the other competent evidence presented, to survive summary judgment. Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463 n. 4 (9th Cir.1994) (required showing of severity " 'varies inversely with the pervasiveness or frequency of the conduct' ") (quoting Ellison v. Brady, 924 F.2d 872, 878 (9th Cir.1991)).
 
 
 20
 Ritzert-Smith has not "establish[ed] the existence of an element essential to [her] case," Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986): she has not shown that the harassment was persistent and severe. Payne, 77 Wn.App. at 515, 892 P.2d at 1107; see also Gross, 53 F.3d at 1537-45 (affirming summary judgment after analyzing evidence of hostile environment). The court did not err in granting summary judgment on this claim.
 
 III. Retaliation
 
 21
 Ritzert-Smith contends that Siemens retaliated against her in violation of the Washington Law Against Discrimination, Wash.Rev.Code § 49.60.210(1), when, two months after she filed suit, she was orally reprimanded for walking on uranium containers.[6] She concedes that this was a violation of company policy, but asserts that it was common practice and that the company does not enforce the ban.
 
 
 22
 To make a prima facie case of retaliation, she must show that (1) she was engaging in protected activity; (2) there was an adverse employment decision; and (3) there was a causal link between the two. Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir.1988).
 
 
 23
 She has not shown that any adverse employment action resulted from this incident. See id. at 1376-77; Steiner, 25 F.3d at 1465 n. 6. She was concerned at the time that the company would take disciplinary action, but it did not. Her evaluations for 1992 do not refer to this incident. The court properly granted summary judgment.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Ritzert-Smith argues that she has created a genuine issue of material fact simply by calling the evaluations "false". This conclusory statement does not create a genuine issue of material fact. Forsberg, 840 F.2d at 1419 (purely conclusory allegations "with no concrete, relevant particulars, will not bar summary judgment")
 
 
 [2]
 Ritzert-Smith provides two specific examples, neither of which supports her argument. She says Mark Moberg slammed his fist and yelled at her while the two were working together in 1986, and that she was reprimanded for this incident while he was not. But both of them received "needs improvement" marks for teamwork and cooperation that year. Harry Shima is said to yell and swear on the telephone, but is "nice most of the time." There is no evidence about Shima's evaluations in the record; therefore, there is no evidence that he was treated differently for behavior similar to hers
 
 
 [3]
 The district court queried whether it should consider incidents that occurred outside the three-year statute of limitations, i.e., before September 1989. But plaintiff's cause of action does not stem from these statements. Rather, the incidents are evidence of the evaluators' alleged gender bias. For purposes of the equal pay claim only, we consider statements made before the limitations period. For the hostile environment claim, we consider only incidents occurring within the limitations period
 
 
 [4]
 Phillips signed as "next level management review" on Ritzert-Smith's evaluations for 1993 and 1994. We do not recognize any connection between the 1982 remark and his supervision of performance evaluations 11 years later
 
 
 [5]
 Her account of this incident includes many significant details that we cannot consider. Most of the information she provides is second-hand and lacks foundation. Fed.R.Civ.P. 56(e) (affidavits supporting summary judgment must be based on personal knowledge); see also Gross v. Burgraff Construction Co., 53 F.3d 1531, 1541 (8th Cir.1995) (disregarding hearsay in affidavit describing harassing conduct). To the extent that Ritzert-Smith's affidavit presents "facts that would be admissible as evidence," Fed.R.Civ.P. 56(e), we accept her version of events as true
 
 
 [6]
 Ritzert-Smith also suggests that she received a retaliatory "unsatisfactory" rating for cooperation in 1990 because she complained about the bra incident. This is untrue. She received a "meets requirements" rating for 1990, along with the perennial comment that she needed to get along better with her coworkers