FILED
COURT OF APPEALS
DIVISION II

2015 FEB 10 AM 8:56

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARGARITA MENDOZA de SUGIYAMA, | No. 45087-9-II |
| Appellant. | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Margarita Mendoza de Sugiyama appeals the trial court's order granting summary judgment in favor of the Department of Transportation (Department), arguing there are genuine issues of material fact as to her whistleblower retaliation claim, her hostile work environment claim, her discrimination claim, and her retaliation claim under the Washington Law Against Discrimination (WLAD). She also argues that the trial court erred by striking portions of her declaration and denying her motion to compel discovery.

We hold that the trial court properly granted summary judgment as to all of Mendoza de Sugiyama's claims. We also hold that the trial court did not abuse its discretion by striking portions of her declaration, and the trial court did not manifestly abuse its discretion in denying the motion to compel. Accordingly, we affirm.

## FACTS

Mendoza de Sugiyama is a Mexican-American woman who was terminated from her position as the Department's diversity programs administrator. In June 2003, she was appointed as the diversity programs administrator for the Department's Office of Equal Opportunity (OEO).

At the time, OEO was responsible for both internal and external civil rights programs. The internal civil rights branch (ICRB) addressed civil rights issues regarding state employees while the external civil rights branch addressed civil rights issues with state contractors. Mendoza de Sugiyama was responsible for supervising the ICRB and reported to OEO Director Brenda Nnambi.

In April 2007, Shawn Murinko began working for OEO as the Americans with Disabilities Act/affirmative action coordinator. Murinko has cerebral palsy and is confined to a wheelchair. Sometime in 2009, there was a fire drill in the building where Mendoza de Sugiyama, Nnambi, and Murinko worked. During the fire drill, Murinko was told to wait by the stairs, but no one came to help him evacuate the building. As a result, Murinko's office was moved from OEO offices on the second floor to a human resources (HR) office on the first floor.

After the office relocation, Murinko began to feel as though Mendoza de Sugiyama was retaliating against him. He noted that she referred to him as HR's "golden boy." Clerk's Papers (CP) at 592. He also alleged that she was micromanaging him. On one occasion, she saw him eating lunch in the second floor conference room and told him he was not supposed to be there. She also made a joke about the size of Murinko's head. Murinko believed that Mendoza de Sugiyama's hostility toward HR was being directed toward him because his office was relocated to HR's floor of the building. Murinko complained about Mendoza de Sugiyama's behavior to the Department's chief of staff, Steven Reinmuth. In February 2010, Murinko transferred to a new position within HR, handling external disability matters.

In December 2009, Mendoza de Sugiyama learned that Reinmuth was considering reorganizing OEO so that the ICRB would be moved within HR. Nnambi and Mendoza de

Sugiyama objected to the proposed reorganization. In January 2010, Reinmuth notified Nnambi and HR Director Kermit Wooden that no final decision on the reorganization would be made until December 31, 2010.

On February 2, 2010, Mendoza de Sugiyama wrote a letter to the governor. In her letter, Mendoza de Sugiyama objected to the proposed reorganization of OEO and ICRB, stating that it violated the Code of Federal Regulations from the Federal Highway Administration. Mendoza de Sugiyama also stated that she was "personally and professionally offended and disappointed" that ICRB would be transferred to HR because Wooden, and his supervisor, Assistant Secretary Bill Ford, had a history of sexual relationships with subordinates and sexual harassment. CP at 652. She also accused Wooden of being openly hostile toward her. In addition to her objections to the reorganization of OEO, Mendoza de Sugiyama complained about Murinko's move to the position in HR and the accusations Murinko made about her treatment of him. Ultimately, Mendoza de Sugiyama accused Reinmuth, Wooden, and Murinko of conspiring to undermine her personal integrity and professionalism.

The governor's chief of staff, Jay Manning, responded to Mendoza de Sugiyama's letter on February 26, 2010. In the letter, Manning stated the governor's counsel had reviewed the federal regulations and determined that there was no legal impediment to moving the ICRB to HR, but that he would advise Secretary of Transportation Paula Hammond, to discuss any move with the Federal Highway Administration. Manning also stated that the letter had been discussed with Secretary Hammond, and they decided to begin an independent investigation into the accusations made by Mendoza de Sugiyama and the complaints made by Murinko.

After receiving Chief of Staff Manning's response to her letter, Mendoza de Sugiyama sent a letter to the Federal Highway Administration. Mendoza de Sugiyama reiterated her concerns about moving the ICRB to HR. As evidence of her concern, she pointed out that Reinmuth was attempting to place unqualified people (Murinko) in charge of civil rights issues and was obstructing OEO's ability to report to Secretary Hammond. When Mendoza de Sugiyama was notified that Federal Highway Administration received her complaint, she responded with an additional e-mail containing documents supporting her assertion that Murinko was unqualified for his position. She included confidential documents such as resumes, scores from interview panels, and draft documents that contained Murinko's edits and comments.

In March 2010, Claire Cordon was retained to perform an independent investigation into Mendoza de Sugiyama's and Murinko's complaints. To ensure the independence of the investigation, Cordon was retained by, and reported to, the Department of Personnel, rather than the Transportation Department. In the course of her investigation, Cordon interviewed 47 witnesses and reviewed several hundred pages of documents. Cordon performed three interviews with Mendoza de Sugiyama, exchanged numerous phone calls and e-mails with Mendoza de Sugiyama, reviewed 44 e-mails with 53 accompanying attachments from Mendoza de Sugiyama, and interviewed 28 of Mendoza de Sugiyama's 31 identified witnesses.

Cordon completed her report on July 21, 2010. Cordon determined that Mendoza de Sugiyama's claim that Wooden discriminated against her based on sex was unsubstantiated. Cordon noted that some of Wooden's conduct was unprofessional and inappropriate, but that there was no evidence on discriminatory intent. Cordon also noted that both female and male witnesses accused Wooden of bullying or abusive language or behavior. Cordon concluded that there was

no evidence to support Mendoza de Sugiyama's assertion that Reinmuth, Wooden, and Murinko were conspiring against her.

Cordon did, however, conclude that Murinko's complaints regarding retaliation from Mendoza de Sugiyama were substantiated. Specifically, she determined that evidence supported Murinko's contention that Mendoza de Sugiyama treated him differently by subjecting him to greater scrutiny after his move to the first floor. She also determined that Mendoza de Sugiyama engaged in retaliatory activity by criticizing Murinko's qualifications and position to outside parties such as the governor, attorney general, and Federal Highway Administration. Cordon observed that Mendoza de Sugiyama's current actions demonstrated a loss of objectivity and perspective by Mendoza de Sugiyama and a lack of oversight by Nnambi.

Cordon also addressed Mendoza de Sugiyama's allegations of two instances of sexual misconduct by Wooden and Ford against other employees. In a 2005 complaint against Ford, the complainant alleged that she lost her temporary position because she refused to engage in group sex with Ford. Ford and the complainant had been in a consensual relationship prior to the complainant coming to work at the Department. Cordon's report did not identify any action taken by the Department in response to the allegations against Ford. Also in 2005, a complainant alleged that Wooden had sexually harassed her; however, Wooden claimed that the complainant was actually the person who initiated the sexual contact. There were three additional alleged "victims" that Mendoza de Sugiyama identified based on rumors: one alleged victim denied the rumor, one alleged victim stated that Wooden once asked her to show him the cool places in town, and one alleged victim admitted to starting a consensual committed relationship with Wooden after she left the Department.

5

On August 13, 2010, Secretary Hammond issued a prediscipinary letter to Mendoza de Sugiyama. The letter outlined the charges against Mendoza de Sugiyama and specifically stated: "The charges are based solely upon acts considered to be misconduct and breach of your duties as a manager in WSDOT, and are not based upon the complaints you have made about agency actions you consider to be improper." CP at 1402. The charges were generally related to Mendoza de Sugiyama's actions toward Murinko and conduct during the investigation.

On August 27, Mendoza de Sugiyama provided a written response to Secretary Hammond's prediscipinary letter. Mendoza de Sugiyama disputed all of the charges articulated in Hammond's letter. Mendoza de Sugiyama also stated that she believed the investigation and allegations in the prediscipinary letter were because she was "a Hispanic women over 40" and she reported her concerns to the governor. CP at 745.

On September 10, Mendoza de Sugiyama was notified of her termination effective September 25. The termination notice listed three specific reasons for the termination;

> 1. You responded inappropriately to a disability reasonable accommodation proposal, and in spite of your expertise, failed to direct others to appropriate considerations.
> . . . .
> 2. You subjected your subordinate to unprofessional comments and heightened scrutiny, following consideration of his relocation to another floor. The relocation had been initiated in response to workplace safety and disability accommodation concerns.
> . . . .
> 3. You publicly criticized Mr. Murinko in written documents, even though you were on notice of a complaint of retaliation.

CP at 697, 699, 701. In explaining the level of discipline to be imposed, Secretary Hammond explained:

Your actions of sending critical letters and confidential information to outside parties cannot be tolerated. You possess the expertise to know how to navigate a complaint and work toward a resolution, yet you intentionally worked to repeatedly undermine Mr. Murinko's reputation, subjected him to increased scrutiny after a reasonable accommodation request was made, and released documents that were confidential—all without any recognition that he was a protected complainant. In taking these actions, you personally created risk for the agency, and your actions could be viewed as efforts to undermine Mr. Murinko's reputation with people with whom and for whom he works.

I understand you felt a need to address the possible transition of OEO's Internal Civil Rights Branch to Human Resources with the Governor's office, but I cannot find any credible reason why you publicly complained about Mr. Murinko in these communications. . . . I find the timeline of events and information you shared about him disturbing. Your actions were repeated and malicious, and appear to be a calculated campaign to attack individuals in the agency. What has occurred is not a single incident that could be explained as a lack of judgment or a mistake.

CP at 704-05 (emphasis omitted). Based on Mendoza de Sugiyama's actions, Secretary Hammond determined the only appropriate disciplinary action would be termination.

On September 24, Mendoza de Sugiyama submitted an online whistleblower complaint to the Washington State Auditor's Office. Her complaint alleged that the Department spent $100,000 remodeling the HR area and created a "risk to legal and civil rights of members of the public with disabilities by placing an unqualified person as the lead for all WSDOT external ADA matters." CP at 851. The auditor's office declined to open a whistleblower investigation into Mendoza de Sugiyama's complaint.

After Cordon's report, Secretary Hammond and Reinmuth also took action to address the "clear pattern of abusive behavior and unprofessional conduct by Mr. Wooden toward people regardless of their race, gender, or age." CP at 1016. But even after Secretary Hammond and Reinmuth took corrective action, three managers in HR brought Reinmuth a two page list of

complaints regarding Wooden's generally unprofessional management. As a result, Secretary Hammond terminated Wooden's employment.

On July 26, 2011, Mendoza de Sugiyama filed an amended complaint[1] in Thurston County Superior Court against the Department. In her complaint, she alleged claims for whistleblower retaliation, race and gender discrimination, hostile work environment, and retaliation for opposing discrimination.

During discovery, the Department filed a motion for a protective order to limit Mendoza de Sugiyama's discovery request for e-mails and other electronically stored information. The same day, Mendoza de Sugiyama filed a motion to compel the Department to disclose the same e-mails and electronically stored information. Mendoza de Sugiyama had requested that the Department disclose all e-mails exchanged between 12 identified individuals. The Department identified 174,754 e-mails that were exchanged between the 12 identified individuals. The Department presented evidence that it would take approximately 62 days and cost approximately $1,000,000 to review all the e-mails for responsiveness and privilege. Mendoza de Sugiyama responded that the Department had already compiled all the e-mails and simply had to electronically transfer them; therefore, the request was not overly broad or unduly burdensome.

On May 18, 2012, the trial court denied Mendoza de Sugiyama's motion to compel stating:

> With regard to plaintiff's motion to compel discovery of electronically stored information ("ESI"), including but not limited to e[-]mails, RFP Nos. 27-42, the Court finds that plaintiff's requests are overly broad and unduly burdensome. The request would require WSDOT to produce 175,000 e[-]mails, which is too many. Therefore, the request is denied. This ruling is not intended to preclude plaintiff from seeking discovery of ESI, either through a collaborative effort with WSDOT to develop and employ key-word search strategies that are tailored to the

---

[1] The original complaint was filed on June 22, 2011.

issues in this case, or through discovery requests that are tailored to the issues in the case and crafted in such a way that WSDOT can reasonably fashion a search strategy designed to gather the ESI plaintiff is seeking, in the absence of a collaborative effort.

CP at 397-98.

On October 19, the Department filed a motion for summary judgment. Both parties submitted extensive affidavits, depositions, and exhibits. On June 7, 2013, the trial court granted the Department's motion for summary judgment and dismissed Mendoza de Sugiyama's claims with prejudice. Mendoza de Sugiyama appeals.

## ANALYSIS

### A. DISCOVERY AND EVIDENTIARY ISSUES

Mendoza de Sugiyama argues that the trial court erred by (1) denying her motion to compel discovery and (2) striking portions of her declaration. As a result, she argues, the trial court considered an incomplete record on summary judgment. The trial court did not abuse its broad discretion to manage discovery, and any error the trial court may have made in striking portions of Mendoza de Sugiyama's declaration is harmless.

#### 1. Order Denying Motion to Compel Discovery

Mendoza de Sugiyama argues that the trial court erred by denying her motion to compel the Department to provide all 174,000 e-mails between the people identified in her request for production. Specifically, she asserts that the request was not overly broad or burdensome because the e-mails had already been identified and could easily be transferred to an external hard drive. Mendoza de Sugiyama's assertion misses the salient point in both the Department's argument and the trial court's decision—that the Department could not determine whether the 174,000 e-mails

and attached documents were responsive to her request without reviewing each individually. Accordingly, the trial court did not manifestly abuse its discretion by denying Mendoza de Sugiyama's motion to compel.[2]

The decision to grant or deny a motion to compel is within the discretion of the trial court, and we will not reverse the decision absent an abuse of discretion. *Clarke v. Office of the Attorney General*, 133 Wn. App. 767, 777, 138 P.3d 144 (2006), *review denied*, 160 Wn.2d 1006 (2007). The court abuses its discretion when its decision is based on untenable grounds or reasons. *Clarke*, 133 Wn. App. at 777. CR 26(b)(1) allows the trial court to limit the scope of discovery if "the discovery is unduly burdensome or expensive." And, the trial court may grant a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." CR 26(c).

Here, the trial court recognized that Mendoza de Sugiyama's request would require the Department to individually review over 174,000 e-mails and corresponding attachments. The Department presented evidence establishing that this review could cost approximately $1,000,000. Contrary to Mendoza de Sugiyama's assertion, compliance with the discovery request was not as

---

[2] Both parties note that Mendoza de Sugiyama has a pending public records request which we recently addressed and resolved in Mendoza de Sugiyama's favor. *Wash. State Dep't of Transp. v. Mendoza de Sugiyama*, 182 Wn. App. 588, 599-600, 330 P.3d 209 (2014). Neither party appears to argue that the Public Records Act (PRA) request has any bearing on the propriety of the trial court's ruling on the motion to compel, and with good reason. The scope of the PRA, ch. 42.56 RCW is significantly broader than the rules governing discovery in a civil case. The exceptions and exemptions under the PRA are narrowly construed, and a public records request is not limited by considerations such as relevance or breadth. *See* RCW 42.56.080. Because of the significant differences between the PRA and the civil discovery rules, Mendoza de Sugiyama's ability to obtain the documents under the PRA has no bearing on whether the trial court manifestly abused its discretion by denying Mendoza de Sugiyama's motion to compel discovery based on the determination Mendoza de Sugiyama's request was overly broad and burdensome.

simple as transferring the e-mails to an external hard drive. And, the trial court's order did not preclude Mendoza de Sugiyama from ever obtaining the e-mails. Rather, the trial court's order required Mendoza de Sugiyama to take reasonable steps to help narrow the scope of her discovery request. The trial court did not abuse its discretion in denying Mendoza de Sugiyama's motion to compel discovery.

      2.    Order Striking Portions of Mendoza de Sugiyama's Declaration

Mendoza de Sugiyama argues that the trial court erred by striking entire portions of her declaration. The trial court struck a total of 20 paragraphs from Mendoza de Sugiyama's declaration because "they lack foundation, offer only opinion or legal conclusions, or are hearsay." CP at 1534. However, Mendoza de Sugiyama limits her argument to "paragraphs containing her letter to the governor as an exhibit (par. 20), her letter to the governor's chief of staff (par. 32), and her letter to the [Federal Highway Administration] (par. 30)." Br. of Appellant at 47. Mendoza de Sugiyama argues that the trial court erred because her letters are properly admitted as exhibits. Because Mendoza de Sugiyama's letters to the governor, the governor's chief of staff, and the Federal Highway Administration were already properly part of the record before the trial court on summary judgment, any error resulting from the trial court striking the paragraphs in Mendoza de Sugiyama's declaration containing these documents is harmless. *See Milligan v. Thompson*, 110 Wn. App. 628, 634-35, 42 P.3d 418 (2002).

B.    SUMMARY JUDGMENT

We review a trial court's order on summary judgment de novo. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005); *Domingo v. Boeing Emps' Credit Union*, 124 Wn. App. 71, 78, 98 P.3d 1222 (2004). Therefore, we must determine whether, based

on the record before the trial court on summary judgment, Mendoza de Sugiyama has demonstrated that there is a genuine issue of material fact that precludes summary judgment. We conclude that she has not and, thus, affirm the trial court's order granting the Department's motion for summary judgment.

A trial court's order granting summary judgment is proper when the pleadings and affidavits before the court show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CrR 56(c). "'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

All of Mendoza de Sugiyama's claims require her to establish discriminatory or retaliatory intent. *See* RCW 49.60.030(1), .210(1), .210(2). A plaintiff may establish a prima facie case of discrimination by either offering direct evidence of an employer's discriminatory intent, or by satisfying the *McDonnell Douglas*[3] burden-shifting test that gives rise to an inference of discrimination. *Kastanis v. Educ. Emps. Credit Union*, 122 Wn.2d 483, 491, 859 P.2d 26, 865 P.2d 507 (1993). Here, Mendoza de Sugiyama does not argue that there is direct evidence of discriminatory intent.[4] Therefore, we apply the *McDonnell Douglas* burden shifting test to

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[4] An employer's discriminatory remarks are generally considered direct evidence of discriminatory intent. *See Johnson v. Express Rent & Own, Inc.*, 113 Wn. App. 858, 862-63, 56 P.3d 567 (2002). Here, there is nothing in the record demonstrating that any discriminatory remarks were made to, or about, Mexican-Americans or women in the Department.

determine whether Mendoza de Sugiyama presented evidence supporting an inference of discriminatory intent that created a genuine issue of material fact.

Under the *McDonnell Douglas* burden shifting test, the plaintiff must first establish a prima facie case of discrimination. *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 354, 172 P.3d 688 (2007) (citing *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180, 23 P.3d 440 (2001)). If the plaintiff establishes a prima facie case under *McDonnell Douglas*, then a legally mandatory, rebuttable presumption of discrimination temporarily takes hold, and the evidentiary burden shifts to the defendant to produce admissible evidence of a legitimate, nondiscriminatory explanation for the adverse employment action. *Hegwine*, 162 Wn.2d at 354. If the employer meets this intermediate production burden, the presumption established by having the prima facie evidence is rebutted and the presumption simply drops out of the picture. *Hegwine*, 162 Wn.2d at 354. Once the presumption is removed, the plaintiff is then afforded a fair opportunity to show a defendant's stated reason for the adverse action was in fact pretext. *Hegwine*, 162 Wn.2d at 354. If a plaintiff cannot present evidence that the defendant's reasons for the adverse employment action are untrue or pretext, summary judgment is proper. *Domingo*, 124 Wn. App. at 78.[5]

---

[5] We recognize that our Supreme Court recently clarified the different ways to prove that the employers' legitimate, nondiscriminatory reason for the adverse employment action is a pretext for discrimination. *Scrivener v. Clark College*, 181 Wn.2d 439, 441-42, 334 P.3d 541 (2014). Our Supreme Court stated that there are five ways for a plaintiff to demonstrate pretext, rather than the four ways previously articulated by the Court of Appeals. *Scrivener*, 181 Wn.2d at 447. The plaintiff can demonstrate pretext by showing the allegedly legitimate basis for the employment action (1) had no basis in fact, (2) was not really the motivating factor for the decision, (3) was not temporally connected to the adverse employment action, (4) was not a motivating factor in employment decisions for similarly situated employees, or that (5) discrimination was a substantially motivating factor in the employment action. *Scrivener*, 181 Wn.2d at 447-48. However, Mendoza de Sugiyama baldly asserts that she has rebutted the Department's "pretextual reason," and she makes no attempt to demonstrate that the Department's legitimate,

Here, Mendoza de Sugiyama fails to establish a genuine issue of material fact under the *McDonnell-Douglas* burden-shifting test. Therefore, the trial court's order granting the Department's motion for summary judgment was proper.

1. Whistleblower Retaliation Claim

RCW 42.40.050 and RCW 49.60.210(2) prohibit retaliation against a whistleblower. To establish a prima facie case of retaliation, an employee must show that (1) she engaged in a statutorily protected activity (filing a whistleblower complaint), (2) the employer took an adverse employment action, and (3) the adverse action was caused by the employee's activity. *Milligan*, 110 Wn. App. at 638.[6] The Department argues that Mendoza de Sugiyama cannot establish a prima facie case of whistleblower retaliation because (1) she filed a whistleblower complaint after she was terminated from her employment and (2) the letters to the governor and the Federal Highway Administration are not whistleblower complaints for the purposes of establishing a cause of action under RCW 42.40.050 and RCW 49.60.210(2). The Department is correct.

---

nondiscriminatory reasons for her termination were a pretext for discrimination. Reply Br. of Appellant at 3, Br. of Appellant at 30. Therefore, our Supreme Court's opinion in *Scrivener* does not affect our analysis here.

[6] Although *Milligan* addresses the standard for establishing a prima facie case for retaliation for opposing discriminatory practices, the standard is equally applicable to whistleblower retaliation because a whistleblower retaliation claim is derived from the same statute, RCW 49.60.210. *See* RCW 42.40.050(1)(a) ("Any person who is a whistleblower, as defined in RCW 42.40.020, and who has been subjected to workplace reprisal or retaliatory action is presumed to have established a cause of action for the remedies provided under chapter 49.60 RCW.").

14

a. Mendoza de Sugiyama's September 24, 2010 Complaint to the Auditor's Office

Secretary Hammond sent Mendoza de Sugiyama "official notification of [her] termination" on September 10, 2010. CP at 694. Mendoza de Sugiyama filed her whistleblower's complaint with the State Auditor's Office on September 24, 2010. Because Mendoza de Sugiyama filed her whistleblower complaint with the auditor's office *after* she was notified of her termination, her termination could not be caused by her whistleblower complaint.

However, Mendoza de Sugiyama argues that her whistleblower complaint was filed before her termination because Mendoza de Sugiyama's last day of employment was September 24, the same day she filed the whistleblower complaint with the auditor's office. Even if this were an accurate determination of the date on which Mendoza de Sugiyama was terminated, it does not establish that Mendoza de Sugiyama was terminated because of the whistleblower complaint. Regardless of what date Mendoza de Sugiyama was "terminated," the decision to terminate her employment was made and communicated to her well before she filed a whistleblower complaint with the auditor's office. Mendoza de Sugiyama cannot establish a prima facie case of retaliation based on the whistleblower complaint she filed with the auditor's office.

b. Mendoza de Sugiyama's Letters to the Governor and the Federal Highway Administration

Mendoza de Sugiyama also argues that she meets the definition of a whistleblower based on the letters she wrote to the governor and the Federal Highway Administration. We disagree.

Under RCW 42.40.020(10)(a)(i), a whistleblower is "[a]n employee who in good faith reports alleged improper governmental action to the auditor or other public official, as defined in subsection (7) of this section." RCW 42.40.020(7) defines "public official" as

15

the attorney general's designee or designees; the director, or equivalent thereof in the agency where the employee works; an appropriate number of individuals designated to receive whistleblower reports by the head of each agency; or the executive ethics board.

Improper government action includes, but is not limited to, gross waste of public funds, violation of federal or state law, or gross mismanagement. RCW 42.40.020(6)(a). However, improper governmental action does not include issues related to personnel actions such as promotions, demotions, or claims of discriminatory behavior. RCW 42.40.020(6)(b). Based on the definitions in RCW 42.40.020, Mendoza de Sugiyama cannot be considered a whistleblower based on her letters to the governor and the Federal Highway Administration.

Mendoza de Sugiyama's alleged whistleblower complaints were not sent to the correct person designated in the whistleblower statute. The statute clearly states to whom a whistleblower complaint can be made. RCW 42.40.020(7) does not include the governor or employees of a federal agency. We will not look beyond the plain language of the statute and read words into a statute that are not there. *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 708, 985 P.2d 262 (1999). Therefore, Mendoza de Sugiyama's letters to the governor and the Federal Highway Administration are not whistleblower complaints under the statute.

Similarly, Mendoza de Sugiyama's claim that a letter becomes a whistleblower complaint if a designated person ultimately receives it or learns of it fails. The statute explicitly requires that a whistleblower complaint be reported to the state auditor or a designated public official. Therefore, Mendoza de Sugiyama's letters are not transformed into whistleblower complaints simply because Secretary Hammond ultimately learned of them.

Moreover, even if Mendoza de Sugiyama's complaints were reported to a public official as defined in RCW 42.40.020(7), Mendoza de Sugiyama's complaints about Murinko's position and qualifications are personnel issues and are clearly outside the scope of the whistleblower statute. RCW 42.40.020(6)(b). Secretary Hammond repeatedly stated that, to the extent Mendoza de Sugiyama's communications to outside agencies played a factor in her termination, it was due to Mendoza de Sugiyama's inappropriate criticisms of Murinko knowing that there was a pending retaliation complaint and her improper disclosures of Murinko's confidential interview and application materials. Because the activities that resulted in Mendoza de Sugiyama's termination were not protected activities, she cannot make a prima facie case for whistleblower retaliation, and the trial court properly granted the Department's motion for summary judgment.

2. WLAD Claim: Hostile Work Environment

To support a claim of a hostile work environment, Mendoza de Sugiyama is required to make a prima facie case that the actions (1) were unwelcome, (2) were because of the plaintiff's status as a member of a protected class, (3) affected the terms or conditions of employment, and (4) could be imputed to the employer. *Glasgow v. Georgia-Pac. Corp.*, 103 Wn.2d 401, 406-08, 693 P.2d 708 (1985). "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law." *Glasgow*, 103 Wn.2d at 406.

Here, Mendoza de Sugiyama cannot establish that she was subject to a hostile work environment due to either her race or gender. She alleges that she was subjected to a hostile work environment because of Wooden's hostile behavior. But, the evidence establishes that Wooden's behavior was universally unprofessional and hostile. Although Mendoza de Sugiyama may be

17

able to demonstrate that Wooden's behavior was hostile toward her, she cannot demonstrate that Wooden's behavior was based on her race or her gender. Accordingly, Mendoza de Sugiyama cannot establish a prima facie claim of a hostile work environment.

Mendoza de Sugiyama also alleges that Reinmuth created a hostile work environment. She states that Reinmuth required Nnambi to attend meetings with her and that Reinmuth repeatedly criticized her. She contends that Reinmuth sought to move the ICRB to HR despite Mendoza de Sugiyama's complaints about Wooden and that Reinmuth interjected his opinions about Mendoza de Sugiyama to Cordon during her investigation. These claims fail to show that Reinmuth created a hostile work environment.

First, ICRB's potential move to HR is irrelevant. Reinmuth was clear that no final decision would be made until December 2010, well after Mendoza de Sugiyama was terminated. Also, Mendoza de Sugiyama fails to explain how this potential move created a hostile work environment based on her race or gender. Second, Reinmuth was interviewed for Cordon's report because of his position in the Department and because of his involvement with all the parties in this situation. There is no basis for Mendoza de Sugiyama's assertion that Reinmuth's participation in Cordon's investigation contributed to creating a hostile work environment based on her race or gender. Third, even assuming Reinmuth's decision to have Nnambi attend meetings with Mendoza de Sugiyama and his criticism of Mendoza de Sugiyama's work was done with discriminatory intent, Mendoza de Sugiyama fails to demonstrate how this conduct was so pervasive that it altered the terms and conditions of her employment. Therefore, Mendoza de Sugiyama has failed to present a prima facie case that Reinmuth created a hostile work environment. Because Mendoza de

Sugiyama has failed to demonstrate a prima facie case establishing her hostile work environment claim, the trial court properly granted the Department's motion for summary judgment.

### 3. WLAD Claim: Disparate Treatment

To establish a prima facie case of disparate treatment, Mendoza de Sugiyama must show that she (1) belongs to a protected class; (2) was treated less favorably in the terms and conditions of his employment than a similarly situated, nonprotected employee; and (3) the nonprotected "comparator" was doing substantially the same work. *Domingo*, 124 Wn. App. at 81. It is undisputed that as a Hispanic woman, Mendoza de Sugiyama belongs to a protected class. However, Mendoza de Sugiyama cannot identify comparators that support her claim of disparate treatment.

#### a. During Employment

Mendoza de Sugiyama claims that both Wooden and Reinmuth treated her differently during her employment based on her race and gender. She alleges that Wooden discriminated against her because Wooden "spoke to her in a demeaning way, cancelled meetings with her and, when he did attend meetings, he refused to interact with her." Br. of Appellant at 41. In her brief, Mendoza de Sugiyama states that other women complained of similar behavior, but to establish a prima facie case of disparate treatment, Mendoza de Sugiyama must demonstrate that Wooden behaved differently toward a nonprotected employee. *Domingo*, 124 Wn. App. at 81. Mendoza de Sugiyama has not demonstrated that Wooden regularly spoke respectfully to nonprotected employees or never cancelled meetings with nonprotected employees. In fact, the record establishes that Wooden treated everyone poorly and with disrespect. Mendoza de Sugiyama has not established a prima facie case of disparate treatment based on Wooden's treatment of her.

19

Mendoza de Sugiyama also claims that Reinmuth discriminated against her based on her race and gender by treating her differently. However, as with Wooden, she has failed to identify appropriate comparators to support her disparate treatment claim. She alleges that Reinmuth treated her differently because nonprotected employees had direct access to him through an open-door policy, but Mendoza de Sugiyama has not alleged that she attempted to take advantage of his open-door policy or that she tried to exercise the same type of direct access as others but was denied. Therefore, whatever access nonprotected employees may have had to Reinmuth has no bearing on Mendoza de Sugiyama's disparate treatment claim against Reinmuth.

Mendoza de Sugiyama also alleges that Reinmuth was quick to criticize her in response to a Caucasian male's (Murinko) complaint, but failed to act on her complaint about Wooden. She does not specify what complaint or complaints Reinmuth failed to act on. When the Department was informed of both Murinko's complaint against her and her complaint against Wooden, the same action was taken—an independent investigation. Therefore, there is no evidence supporting a claim of disparate treatment.

b.      Termination

Mendoza de Sugiyama asserts that "her race and/or gender was a substantial factor in her termination." Br. of Appellant at 43. Mendoza de Sugiyama's claim fails because she cannot present a prima facie case of disparate treatment in regard to her termination.

Mendoza de Sugiyama attempts to use Wooden and Assistant Secretary Bill Ford as comparators because they had been accused of sexual harassment in the past but were not terminated. She argues that, in contrast, she was accused of retaliation and then terminated. But Wooden's and Ford's prior cases are not comparable, primarily because Reinmuth was not

responsible for the action that was or was not taken against Wooden and Ford. The sexual harassment cases against Wooden and Ford occurred five years earlier and Reinmuth was not chief of staff at the time.[7] Therefore, how Wooden's and Ford's cases were handled cannot establish Reinmuth treated Mendoza de Sugiyama differently.

Mendoza de Sugiyama also attempts to designate Nnambi and Colleen Jollie as comparators because they were both women of color who had their authority allegedly reduced or undermined by Reinmuth. But a comparator must be a nonprotected person. As Nnambi and Jollie are both women of color, they fall within the same protected class as Mendoza de Sugiyama. Therefore, Nnambi and Jollie are not appropriate comparators for a disparate treatment claim.

Mendoza de Sugiyama cannot make a prima facie showing of disparate treatment because she has failed to identify how she was treated differently than a nonprotected employee. Mendoza de Sugiyama fails to establish a prima facie case of disparate treatment either during her employment or as a substantial factor in her termination. Therefore, Mendoza de Sugiyama has failed to establish a genuine issue of material fact under the *McDonnell Douglas* burden shifting test. The trial court properly granted the Department's motion for summary judgment on Mendoza de Sugiyama's disparate treatment claim.

4.    WLAD Claim: Retaliation for Opposing Discrimination Claim

To establish a prima facie case of retaliation, the employee must show that (1) he or she engaged in a statutorily protected activity, (2) the employer to adverse employment action, and (3)

---

[7] Hammond was chief of staff at the time and, in fact, did recommend Wooden's termination. However, the then Secretary of Transportation, Mr. MacDonald, decided that no action would be taken.

21

there was a causal link between the employee's activity and the employer's adverse action. *Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wn. App. 774, 797, 120 P.3d 579 (2005). Mendoza de Sugiyama alleges that her termination was in retaliation for her complaints about "her own gender and race discrimination by Reinmuth and Wooden." Br. of Appellant at 44. Mendoza de Sugiyama asserts that she has presented a prima facie case because she was terminated after she complained. Even assuming that temporal proximity is sufficient to establish a prima facie case of retaliation, the Department has presented a legitimate, nondiscriminatory reason for Mendoza de Sugiyama's termination and Mendoza de Sugiyama makes only conclusory, unsupported assertions that the Department's legitimate reason for her termination is pretext.

Here, Secretary Hammond based her decision to terminate Mendoza de Sugiyama on Mendoza de Sugiyama's actions toward Murinko and her disclosure of confidential interview and employment documents to other agencies. Mendoza de Sugiyama argues that she can demonstrate pretext because she stated she did not retaliate against Murinko. But, it is undisputed that she improperly disclosed confidential interview and employment documents to the Federal Highway Administration. To the extent that Mendoza de Sugiyama asserts that her termination based on her own improper actions toward Murinko and her improper disclosure of confidential documents was pretext for retaliation, she has not provided any evidence or argument supporting that argument. Thus, Mendoza de Sugiyama's claim for retaliation for opposing discrimination does not establish a genuine issue of material fact under the *McDonnell-Douglas* burden shifting test. Accordingly, the trial court properly granted the Department's motion for summary judgment.

C.   ATTORNEY FEES

Mendoza de Sugiyama also requests attorney fees. RAP 18.1(a) allows this court to award attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." "Argument and citation to authority are required under the rule to advise us of the appropriate grounds for an award of attorney fees." *Bishop of Victoria Corp. Sole v. Corporate Business Park, LLC*, 138 Wn. App. 443, 462, 158 P.3d 1183 (2007) (citing *Austin v. U.S. Bank of Wash.*, 73 Wn. App. 293, 313, 869 P.2d 404, *review denied*, 124 Wn.2d 1015 (1994)).

Mendoza de Sugiyama has not cited to any legal authority for awarding her attorney fees in this case. Therefore, we do not consider Mendoza de Sugiyama's request for attorney fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will instead be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Maxa, J.

23