IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DOMINIQUE KEIMBAYE,<br><br>                  Appellant,<br><br>        v.<br><br>PROVIDENCE REGIONAL MEDICAL CENTER EVERETT, a Washington Non-Profit Corporation, and CHRISTOPHER S. KORTENDICK, an individual,<br><br>                  Respondents. | No. 85888-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Dominique Keimbaye, representing himself, appeals the dismissal of his lawsuit against his former employer Providence Regional Medical Center Everett, his supervisor Travis John, and his coworker Christopher Kortendick, where he alleged several violations of the Washington Law Against Discrimination (WLAD).[1] The trial court dismissed Keimbaye's claims for wrongful discharge and retaliation on summary judgment. At the close of evidence, the court granted Providence's CR 50 motion for a directed verdict[2] dismissing Keimbaye's remaining hostile work environment claims. Because the trial court did not err, we affirm.

---

[1] Ch. 49.60 RCW.

[2] "Motions for directed verdict and motions for judgment notwithstanding the verdict were renamed 'motions for judgment as a matter of law' effective September 17, 1993." *Delgado Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001) (quoting *Litho Color, Inc., v. Pac. Emp'rs Ins. Co.*, 98 Wn. App. 286, 298 n.1, 991 P.2d 638 (1999)). However, because both parties use the term "directed verdict" throughout their briefing, we generally use that term for the interest of clarity.

FACTS

On December 27, 2017, Providence hired Keimbaye as an anesthesia technician at its regional medical center in Everett. The offer letter stated that Keimbaye's employment was subject to a collective bargaining agreement and Providence could end his employment at any time during his probationary period. The letter named Travis John as Keimbaye's supervisor. As part of the onboarding process, Keimbaye signed an "Acknowledgement of Commitment to the Code of Conduct" which specified that compliance was "a condition for, but not a guarantee of, continued employment." Providence's "Standards of Conduct," in turn, described "[r]egular and predictable attendance" as an "essential function" and stated that "[a]ll caregivers are required to accurately record their time worked."

In February 2018, Providence's timekeeper and scheduler Chris Maddy informed John that Keimbaye had been coming in late to work almost every day. John verbally reminded Keimbaye that he was expected to arrive on time. Despite John's apparent assertion in an e-mail documenting the exchange that Keimbaye "agree[d] to work on it," he continued to be late to work. On April 3, John spoke again with Keimbaye regarding his tardiness. In another e-mail memorializing the conversation, John specified that Keimbaye needed to "put more effort into being on time" in accordance with Providence's absence and lateness policy. On June 11, Maddy informed John that Keimbaye's timekeeping records appeared to show "a pattern of manipulation and timecard fraud."

On June 12, John placed Keimbaye on administrative leave pending an investigation into his tardiness and timekeeping records. The investigation

established that during his six-month probationary period, Keimbaye had 51 instances of reporting late for work and 74 occurrences of accumulating unapproved overtime by working late without permission from management, a practice Maddy characterized as "padding the timecard." On June 22, Providence terminated Keimbaye's employment for "Misconduct/Policy Violation."

However, while the investigation was pending, Keimbaye called Providence's human resources hotline on June 15 to report that anesthesia technician Opal Lonon had been sexually harassing him since January 2018. Keimbaye alleged that Lonon "hugged [him] tightly" and "coiled her legs around [his] legs." Keimbaye further alleged that the harassment persisted even though he told Lonon the conduct was unwelcome and she "ha[d] gone around telling other employees that [he] [was] taking advantage of the system to get more hours, which [was] not true."

Providence senior human resources consultant Marilyn Rice investigated Keimbaye's allegations and issued her report on June 25. Rice interviewed Keimbaye, Lonon, and several other individuals that Keimbaye identified as witnesses, including his supervisor John and his coworker Chris Kortendick. None of the interviewees corroborated any part of Keimbaye's allegations except Lonon, who admitted that on one occasion in early January 2018 she hugged Keimbaye with both arms and wrapped her leg around his. Lonon denied Keimbaye's remaining allegations. Rice found that Keimbaye lacked credibility as the coworkers he identified as witnesses did not corroborate his claims, but that Lonon was credible because she admitted to the January 2018 incident. Rice

recommended that John, as supervisor, "take appropriate disciplinary action to address Ms. Lonon's inappropriate conduct." On June 28, John took corrective action in the form of a written warning memorializing Lonon's policy violation and notifying her that continued violations could result in discharge from employment. John also sent Keimbaye an investigation closeout letter.

Almost three years later, on June 8, 2021, Keimbaye filed a complaint under the WLAD against Providence, Kortendick, and John alleging "national origin discrimination/harassment," "sex discrimination/harassment," and "retaliation." In the complaint, Keimbaye described himself as a Black male who immigrated from the Republic of Chad and speaks fluent English with an accent. Keimbaye alleged that John and Kortendick were Keimbaye's "direct supervisors" and Lonon frequently harassed him in their presence, but they laughed and refused to help. He further alleged that John, Kortendick, and other employees treated him "differently and negatively compared to non-African employees" and he was terminated in retaliation for reporting harassment.

Keimbaye represented himself through all stages of this litigation. During the course of discovery, the trial court found that Keimbaye's pursuit of frivolous motions may have warranted an award of fees and costs to Providence pursuant to CR 37 and CR 11, but refrained from ordering sanctions "with the understanding that [Keimbaye] will comply with the court's orders in the future." On February 3, 2022, the trial court denied Keimbaye's motion to compel discovery, found that the motion violated CR 11(a), and awarded Providence fees incurred in responding to the motion contingent upon presentation of a cost bill. Keimbaye petitioned this

court for discretionary review of the resulting cost bill order and a commissioner of this court denied review.

In April, 2022, Providence moved for summary judgment on all of Keimbaye's claims. Keimbaye filed a cross motion for summary judgment, relying on his own declaration and attachments thereto as well as the declaration and deposition of Yulia Husted, an anesthesia technician student clinical intern who left Providence in March 2018. In her declaration, Husted asserted that Keimbaye was subject to racism and sexual harassment "almost daily" and he was "maliciously and indifferently accused and discharged" from his job. During her deposition, however, Husted clarified that she never witnessed John harassing or mistreating Keimbaye.

On May 20, 2022, the trial court granted summary judgment dismissal of Keimbaye's claims for wrongful discharge and retaliation but denied summary judgment as to his hostile work environment claims. The trial court dismissed Keimbaye's wrongful discharge claim because he did not present "any evidence to establish a prima facie case that his termination from employment was motivated in any way by his race, sex, or national origin." Providence "presented substantial unrebutted evidence that [Keimbaye] was terminated because of his repeated violations of the employer's policies regarding clocking in and clocking out from work," and Keimbaye "produced no evidence that the reasons given for his termination were pretextual." Regarding his retaliation claim, the trial court ruled that Keimbaye "did not present any evidence to establish a prima facie case that he was the subject of any adverse employment action because of any

protected activity." The court also dismissed John as a party, leaving only Providence and Kortendick as named defendants. Providence and Keimbaye each petitioned this court for discretionary review of the partial summary judgment order, and a commissioner of this court denied review.

Trial on the hostile work environment claim commenced in September 2023. Keimbaye moved to designate Husted's deposition in lieu of her testimony on the ground that she was unavailable to testify at trial. Keimbaye sought to admit unauthenticated text messages as an offer of proof. Providence opposed the motion, arguing that Keimbaye had failed to offer admissible evidence establishing that Husted was unavailable. The trial court agreed with Providence and ruled that Husted's deposition could not be read to the jury. At the conclusion of Keimbaye's case in chief, Providence moved for judgment as a matter of law under CR 50(a). On September 12, 2023, the trial court granted Providence's motion and dismissed Keimbaye's remaining claims.

Keimbaye timely appealed.

ANALYSIS

I.      Scope of Appellate Review

As a preliminary matter, we address standards governing the availability and scope of our review. "The scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties." *Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 177 Wn.2d 136, 144, 298 P.3d 704 (2013). An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to

relevant parts of the record." RAP 10.3(a)(6). "Strict adherence to [RAP 10.3] is not merely a technical nicety." *In re Est. of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). "The purpose of [RAP 10.3] is to enable the court and opposing counsel efficiently and expeditiously to review the accuracy of the factual statements made in the briefs and efficiently and expeditiously to review the relevant legal authority." *Litho Color, Inc. v. Pac. Emp'rs Ins. Co.*, 98 Wn. App. 286, 305-06, 991 P.2d 638 (1999). We need not consider arguments that a party does not support by references to the record, meaningful analysis, or citation to pertinent authority. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *see also Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."); *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) ("[B]ald assertions lacking cited factual and legal support" will not be addressed on appeal.).

Keimbaye presents 30 assignments of error on appeal challenging numerous trial court rulings. But, his notice of appeal designated for review only the September 12, 2023 order that granted Providence's CR 50(a) motion to dismiss his remaining claims as a matter of law. RAP 2.4(a) governs the scope of our review, and it limits our review to the "decision designated in the notice of appeal." *See also* RAP 5.3(a)(3) (notice of appeal "must . . . designate the decision or part of decision which the party wants reviewed").

Neither party addresses whether the undesignated orders implicated by Keimbaye's assignments of error are reviewable. In general, a ruling not

designated in the notice of appeal will not be reviewed unless it "prejudicially affects the decision designated in the notice." RAP 2.4(b)(1). An order "prejudicially affects" the decision designated in the notice of appeal where the designated decision "would not have happened but for" the undesignated order. *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 379-80, 46 P.3d 789 (2002). Additionally, RAP 5.3(f) authorizes us to overlook defects in the form of a notice if it "clearly reflects an intent by a party to seek review." Applying these principles, we conclude that the cost bill order is not before us for review because it arose as a consequence of Keimbaye's decision to repeatedly file motions that the trial court deemed frivolous and does not prejudicially affect the order designated in the notice of appeal. We will consider Keimbaye's remaining assignments of error, including those challenging the summary judgment order and related rulings, to the extent his briefing enables us to do so.[3]

## II. Self-Represented Appellant

Keimbaye argues that the trial court's stringent application of procedural rules without adequate consideration of his status as a self-represented litigant unfairly impeded his ability to effectively argue his case. He further contends that the court failed to provide him with substantive guidance and support. We are

---

[3] Providence argues that this court need not consider Keimbaye's challenge to the summary judgment order and the cost bill order because this court already considered and rejected the same arguments when it denied discretionary review. But, "the denial of discretionary review of a superior court decision does not affect the right of a party to obtain later review of the trial court decision or the issues pertaining to that decision." RAP 2.3(c). As the commissioner did not rule on the merits, Keimbaye is entitled to raise the same arguments on appeal.

mindful of the difficulties of self-representation. However, "'the law does not distinguish between one who elects to conduct [their] own legal affairs and one who seeks assistance of counsel—both are subject to the same procedural and substantive laws.'" *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (quoting *In re Marriage of Wherley*, 34 Wn. App. 344, 349, 661 P.2d 155 (1983)); *see also Westberg v. All-Purpose Structures, Inc.*, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997) ("Pro se litigants are bound by the same rules of procedure and substantive laws as attorneys."). The trial court did not apply these principles unfairly. To the contrary, the record indicates that the trial court conscientiously addressed Keimbaye's questions and concerns without providing improper assistance. *See Edwards v. LeDuc*, 157 Wn. App. 455, 460-64, 238 P.3d 1187 (2010) (trial court may exceed limits of impartiality by offering excessive assistance to a self-represented party).

Relatedly, Keimbaye asserts in assignment of error 20 that the trial court unfairly failed to control defense counsel's allegedly unprofessional behavior towards him. "Trial judges have wide discretion to manage their courtrooms and conduct trials fairly, expeditiously, and impartially." *In re Marriage of Zigler*, 154 Wn. App. 803, 815, 226 P.3d 202 (2010). The record does not support Keimbaye's allegations; to the contrary, the trial court properly exercised its discretionary authority to manage its courtroom.

III. Evidentiary Issues

Keimbaye challenges numerous evidentiary rulings in assignments of error 3, 4, 5, 11, 13, 17, 18, 19, 23, 24, 28, 29, and 30. We review a court's evidentiary

rulings for abuse of discretion. *Bengtsson v. Sunnyworld Int'l, Inc.*, 14 Wn. App. 2d 91, 99, 469 P.3d 339 (2020). "A trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons." *Davis v. Globe Mach. Mfg. Co., Inc.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984).

Keimbaye generically challenges numerous unspecified evidentiary rulings on the basis that the rulings were somehow unfair, improper, unclear, unexplained, or inconsistently applied. However, he often fails to identify the precise ruling he challenges or articulate a cognizable legal basis for his assertions. Such arguments are unsupported by sufficient authority, relevant references to the record, or meaningful analysis to permit review. *See Cowiche Canyon*, 118 Wn.2d at 809; *Multicare Health Sys. v. Dep't of Soc. & Health Servs.*, 173 Wn. App. 289, 299, 294 P.3d 768 (2013) ("We cannot and will not comb through the record on the possibility that some mistake may lie somewhere within.").

To the extent that we are able to discern the basis for certain of Keimbaye's evidentiary challenges, the claims lack merit. Keimbaye repeatedly argues that the court excluded evidence, including hearsay, without considering its relevance to his claims. "All relevant evidence is admissible *unless its admissibility is otherwise limited*." *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 669, 230 P.3d 583 (2010) (emphasis added); ER 402. Notably, hearsay is not admissible except as provided by the hearsay exception rules. ER 802. "The rules do not give trial courts discretion to admit inadmissible evidence." *State v. Gonzales-Gonzalez*,

193 Wn. App. 683, 689, 370 P.3d 989 (2016). Keimbaye does not acknowledge these rules or explain how the court erred in applying them.

Keimbaye argues that the court should have excluded evidence of his prior lawsuits because it was unfair and prejudicial, but Keimbaye himself opened the door to this evidence by mentioning it in his opening statement at trial. *See Bengtsson*, 14 Wn. App. 2d at 109 (party may open door for admission of otherwise inadmissible evidence).

Keimbaye also argues that the trial court improperly excluded his affidavit and Husted's deposition. He contends that the court's dismissal of this evidence without trial to assess credibility contravened the guidelines established in ER 602 (restricting testimony to matters about which witness has personal knowledge) and ER 701 (governing opinion testimony by lay witnesses). We disagree. CR 32(a)(3)(B) provides that a deposition may be admitted at trial if the court finds that the witness "resides out of the county and more than 20 miles from the place of trial, unless it appears that the absence of the witness was procured by the party offering the deposition." Here, the trial court declined to admit Husted's deposition testimony because it determined that the text messages Keimbaye offered as proof of her unavailability were inadmissible hearsay. Keimbaye does not provide any meaningful argument or legal authority in support of the proposition that the court erred in doing so. Keimbaye also cites CR 56(e) for the proposition that affidavits and depositions should be considered if they are material to the case, but that rule addresses admissibility of evidence on summary judgment, not at trial.

IV.    Jury Issues

Keimbaye argues that the trial court committed numerous errors that prejudicially impacted the jury's perception of the case, set out in assignments of error 5, 6, 8, 9, 11, 12, 13, 16, 18, 19, 24, and 29.  He contends that the voir dire process was flawed and inconsistent, the jury instructions were unclear and legally inaccurate, the court improperly allowed Providence to discuss his history of litigation, an exhibit should have been admitted earlier, and the improper exclusion of key evidence limited the jury's ability to understand his claims.  A trial court's error is not reversible "unless it affects, or presumptively affects, the outcome of the trial."  *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).  Here, the trial court entered a directed verdict dismissing Keimbaye's remaining claims before the jury deliberated, so the alleged errors could not possibility have affected the outcome of any verdict.

V.    Partial Summary Judgment

Assignments of error 1, 2, 3, 8, and 27 all go to Keimbaye's contention that the trial court erred when it granted summary judgment dismissal of his claims for wrongful discharge and retaliation and dismissal of John as a party.  We disagree.

We review an order on summary judgment de novo, performing the same inquiry as the trial court.  *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002).  Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000); CR 56(c).  We consider all facts and reasonable inferences in the light most favorable to the

nonmoving party.  *Young v. Key Pharm.*, Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

"In discrimination cases, summary judgment is often inappropriate because the WLAD 'mandates liberal construction.'" *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 777, 249 P.3d 1044 (2011) (quoting *Martini v. Boeing Co.,* 137 Wn.2d 357, 364, 971 P.2d 45 (1999)).  We will nevertheless affirm summary judgment of a WLAD claim "when the plaintiff fails to raise a genuine issue of fact on one or more prima facie elements."  *Id.*

The WLAD prohibits employers from terminating employment based on race, color, national origin, sex, and other protected characteristics.  RCW 49.60.180(2).  "A violation of RCW 49.60.180(2) supports a discriminatory discharge claim."  *Crabtree v. Jefferson County Pub. Hosp. Dist. No. 2*, 20 Wn. App. 2d 493, 507, 500 P.3d 203 (2021).  The WLAD also prohibits retaliatory discharge based on engaging in protected activity.  RCW 49.60.210(1).  Our Supreme Court has held that where the employee lacks direct evidence of intentional discrimination, we apply the burden shifting evidentiary framework announced in *McDonnell Douglas Corp. v. Green*[4].  *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 527, 404 P.3d 464 (2017).

To establish a prima facie case of discriminatory discharge, an employee must show that they were "(1) within a statutorily protected class, (2) discharged by the defendant, and (3) doing satisfactory work."  *Crabtree*, 20 Wn. App. 2d at 508.  If the employee makes this showing, "the burden shifts to the employer, who

---

[4] 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

must 'articulate a legitimate, nondiscriminatory reason' for the discharge." *Id.* (internal quotation marks omitted) (quoting *Mikkelsen*, 189 Wn.2d at 527). If the employer carries this burden, the burden shifts back to the employee to produce sufficient evidence that the proffered explanation for the adverse action is pretextual. *Id.* "An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 446-47, 334 P.3d 541 (2014). "The employee is not required to show that discrimination was the only motivating factor for the discharge because an employer's decision may be based on both legitimate and illegitimate reasons." *Crabtree*, 20 Wn. App. 2d at 508-09.

Similarly, "[t]o establish a prima facie case of retaliation for a protected activity under [the WLAD], an employee must show that (1) [they] engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there was a causal link between the employee's activity and the employer's adverse action." *Estevez v. Faculty Club*, 129 Wn. App. 774, 797, 120 P.3d 579 (2005). The employer may rebut the presumption by providing a nondiscriminatory explanation, and the employee may then attempt to prove that the explanation was pretextual. *Id.* at 798.

Keimbaye argues that the trial court overlooked and failed to fully consider key evidence when it dismissed his wrongful discharge and retaliation claims on summary judgment. But, he does not specify what that evidence is, so it is not

possible to evaluate his claim. *See Cowiche Canyon*, 118 Wn.2d at 809. To the extent Keimbaye argues that evidentiary errors prejudicially impacted the trial court's summary judgment ruling, we have considered and rejected those claims.

Keimbaye asserts that the evidence strongly suggests his termination was retaliatory and Providence's reasons for terminating him were pretextual. We disagree. Providence's investigation established that Keimbaye had 51 instances of reporting late for work and 74 occurrences of accumulating unapproved overtime during his six-month probationary period. In light of this evidence, the fact that Providence terminated him days after his harassment report does not establish pretext or retaliation. *See Milligan v. Thompson*, 110 Wn. App. 628, 638-39, 42 P.3d 418 (2002) (summary judgment appropriate where "nonretaliatory evidence is strong").

Keimbaye also argues that the court failed to properly consider evidence of John's harassment and failure to act. However, Keimbaye admitted that he could not recall anything John did towards him that was discriminatory. Additionally, the record shows that John promptly disciplined Lonon in response to Keimbaye's sexual harassment claims. Keimbaye does not otherwise describe or provide citations to the record in support of this claim.

Keimbaye also asserts that the court's summary judgment ruling misapplied the law regarding Kortendick's liability as a supervisor under the WLAD. But, the court refused to dismiss Kortendick as a party on summary judgment, so the ruling was favorable to Keimbaye. Similarly, Keimbaye's claim that the trial court erred when it denied his CR 56(f) motion for extension of time to file an opposition to

Kortendick's motion for summary judgment is immaterial given that Kortendick's motion was denied.

VI.     Judgment as a Matter of Law/Directed Verdict

Keimbaye next argues that the trial court erred when it granted Providence's CR 50(a) motion and dismissed his hostile work environment claims on directed verdict.  We disagree.

A trial court's decision on a CR 50 motion to dismiss is reviewed de novo. *Williams v. Dep't of Soc. & Health Servs.*, 24 Wn. App. 2d 683, 697, 524 P.3d 658 (2022).  "A motion for directed verdict 'should be granted only when, after viewing the evidence in the light most favorable to the nonmoving party, there is no substantial evidence or reasonable inferences therefrom to support a verdict for the nonmoving party.'"  *Mancini v. City of Tacoma*, 196 Wn.2d 864, 877, 479 P.3d 656 (2021) (quoting *H.B.H. v. State*, 192 Wn.2d 154, 162, 429 P.3d 484 (2018)). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the premise is true." *Jenkins v. Weyerhaeuser Co.*, 143 Wn. App. 246, 254, 177 P.3d 180 (2008).

The WLAD prohibits employment discrimination on the basis of protected characteristics, including race, sex, and national origin.  RCW 49.60.010, .030(1), .180(2)(3).  To establish a prima facie claim for discrimination in the form of a hostile work environment, an employee must show that "the harassment (1) was unwelcome, (2) was because of a protected characteristic, (3) affected the terms or conditions of employment, and (4) is imputable to the employer." *Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, 260, 375 P.3d 1076 (2016).  "An

- 16 -

employer will be responsible for harassment by the plaintiff's supervisors or coworkers if the employer '(a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action.'" *LaRose v. King County,* 8 Wn. App. 2d 90, 105, 437 P.3d 701 (2019) (quoting *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 407, 693 P.2d 708 (1985)).

Here, the trial court granted Providence's motion for directed verdict because it concluded that Keimbaye failed to present substantial evidence or create a reasonable inference that Kortendick was a supervisor who could be held personally liable under the WLAD for the alleged harassment or that Providence authorized, knew, or should have known of the harassment and failed to take prompt and adequate corrective action. We conclude that the trial court did not err in doing so.

The WLAD defines "employer" to include "any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons." RCW 49.60.040(11). It is well established that supervisors may be held personally liable for their discriminatory acts when acting in their employer's interest. *Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349, 358, 20 P.3d 921 (2001). In contrast, coworkers who are not acting in a supervisory capacity cannot be held personally liable under the WLAD. *Jenkins v. Palmer*, 116 Wn. App. 671, 674-75, 66 P.3d 1119 (2003) (dismissing coworker from lawsuit under WLAD where "actions she allege[d] . . . did not affect her compensation or other similar terms or conditions of her employment").

The WLAD does not provide a definition for the term "supervisor," but "[f]ederal law is instructive with regard to our state discrimination laws." *Dedman v. Wash. Personnel Appeals Bd.*, 98 Wn. App. 471, 478 n.8, 989 P.2d 1214 (1999). The National Labor Relations Act (NLRA), 29 U.S.C. § 152(11) defines "'supervisor'" as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." Keimbaye offered no evidence that Kortendick did any of those things.

Keimbaye refers to Kortendick as a "lead" and argues that the trial court overlooked evidence that Kortendick performed supervisory roles by assigning tasks, overseeing daily activities, and influencing employment conditions. The term "lead" is derived from the collective bargaining agreement that covers anesthesia technicians at Providence. John testified that four anesthesia technicians, including Kortendick, rotated as "leads" and are in the same collective bargaining unit. John testified that "leads" have no power to hire, fire, discipline, transfer, give raises, approve training, absences, late arrivals, or overtime, or set the work schedule. John also testified that he could not be part of the same collective bargaining unit as the other anesthesia technicians because he was a member of the leadership team. *See* 29 U.S.C. § 152(3) (excluding "any individual employed as a supervisor" from definition of "employee" under NLRA). Thus, if

Kortendick were a supervisor, he could not have been a member of the technicians' collective bargaining unit. Viewing the evidence in the light most favorable to Keimbaye, substantial evidence does not support a finding that Kortendick was a supervisor who could be held personally liable under the WLAD.

As to Providence's liability, Keimbaye points to no evidence that Providence knew of Keimbaye's allegations of sexual or race/national origin harassment while he was still working for Providence. Keimbaye reported the alleged sexual harassment after he was placed on administrative leave, and the record demonstrates that Providence took prompt action. As to Keimbaye's claims of race/national origin harassment, there is no evidence that he filed a report on that basis while working at Providence, so his former employer had no opportunity to investigate or take action.

Keimbaye also argues that the court's handling of the directed verdict motion was confusing and procedurally unclear, but he does not explain why or provide any reasoned legal argument in support of this claim. As previously discussed, Keimbaye's assertions regarding the alleged impact of evidentiary error on the court's ruling lack merit.

Because Keimbaye fails to establish reversible error, we affirm.

WE CONCUR:

Chung, J.

J., J